AMERICAN FEDERATION OF GOVERNMENT EMPLOYEES, AFL–CIO, LOCAL 1843, Petitioner,

v.

FEDERAL LABOR RELATIONS AUTHORITY, Respondent.

No. 87–1153.

United States Court of Appeals, District of Columbia Circuit.

Argued Jan. 5, 1988.

Decided April 8, 1988.

---

Judith D. Galat with whom Mark D. Roth, Washington, D.C., was on the brief, for petitioner.

William R. Tobey, Federal Labor Relations Authority, with whom Ruth E. Peters, Sol. and William E. Persina, Deputy Sol., Federal Labor Relations Authority, Washington, D.C., were on the brief, for respondent.

Before RUTH BADER GINSBURG, BORK *, and WILLIAMS, Circuit Judges.

Opinion PER CURIAM.

Concurring opinion filed by Circuit Judge RUTH BADER GINSBURG.

PER CURIAM:

The American Federation of Government Employees, AFL–CIO, Local 1843 has petitioned for review of an order of the Federal Labor Relations Authority ("FLRA" or the "Authority") which held that an agency did not commit an unfair labor practice (1) when it failed to withhold, from a reinstated employee's back pay award, union dues for the period from the employee's wrongful termination to his reinstatement (the "Termination Period") and (2) when it failed to place the employee in dues withholding status automatically upon the employee's reinstatement. We conclude that the FLRA's decision rests on a plausible reading of the Federal Service Labor–Management Relations Statute ("FSLMRS"), 5 U.S.C. §§ 7101–7135 (1982 & Supp. IV 1986), and is not contrary to the Back Pay Act, 5 U.S.C. § 5596 (1982). We therefore deny the petition for review.

I. BACKGROUND

On January 16, 1982 the Veterans Administration ("VA") discharged one of its employees, Richard Greenwood, for alleged sick leave abuse. Greenwood was a member of AFGE and had made an assignment

---

* Circuit Judge Bork was a member of the panel but did not participate in this decision.

authorizing the VA to withhold union dues from his wages and remit them to the Union pursuant to 5 U.S.C. § 7115(a) (1982).[1] Section 7115(a) requires an agency to honor such an assignment and prohibits revocation of the assignment for a period of one year. Shortly after Greenwood's discharge, the VA terminated its allotment to the AFGE for Greenwood's union dues in accordance with 5 U.S.C. § 7115(b) (1982).[2] On March 5, 1984, the VA reinstated Greenwood to his former job following a decision by the Merit Systems Protection Board that his dismissal was unjustified. Greenwood was entitled to back pay for the Termination Period. See 5 U.S.C. § 5596 (1982).

The Union requested that the VA withhold, and remit to it, Greenwood's union dues for the Termination Period. The VA refused to make the requested withholding. The Union also requested that the VA resume withholding union dues from Greenwood's wages, even though Greenwood had not authorized the VA to do so after his reinstatement. The agency refused this request as well.

The AFGE filed an unfair labor practice charge against the VA, alleging that each of these two rebuffs violated 5 U.S.C. § 7116(a)(1), which prohibits an agency from "interfer[ing] with, restrain[ing], or coerc[ing] any employee" in the exercise of the rights provided by the FSLMRS, and 5 U.S.C. § 7116(a)(8), which makes it an unfair labor practice to "fail or refuse to comply with any provision of [the FSLMRS]." The General Counsel of the FLRA issued a complaint against the VA, and a hearing was held before an Administrative Law Judge. The ALJ concluded

that neither aspect of the VA's decision constituted an unfair labor practice.

The FLRA agreed. *Veterans Administration and Veterans Administration Medical Center, Northport, New York and American Federation of Government Employees, AFL–CIO, Local 1843*, 25 FLRA 523 (1987) (*"Greenwood"*). The Authority observed first that the VA had acted properly when it discontinued allotment of union dues on Greenwood's behalf at the time of his discharge. The FSLMRS explicitly provides that an employee's due allotment shall terminate when "the agreement between the agency and the exclusive representative involved ceases to be applicable to the employee," 5 U.S.C. § 7115(b)(1), and it is undisputed that, upon Greenwood's discharge, the agreement between the VA and the Union ceased to be applicable to him.

The Authority next confronted the General Counsel's argument that the Back Pay Act, 5 U.S.C. § 5596 (1982), in effect restored the VA's obligation to make dues allotments on Greenwood's behalf throughout the period of his wrongful discharge. The Back Pay Act provides (with exceptions not relevant here) that a reinstated employee is entitled to receive "an amount equal to all or any part of the pay, allowances, or differentials, as applicable which the employee normally would have earned or received during the [Termination Period] if the personnel action had not occurred." 5 U.S.C. § 5596(b)(1)(A)(i). It further provides that the reinstated employee *"for all purposes*, is deemed to have performed service for the agency." 5 U.S.C. § 5596(b)(1)(B) (emphasis added). In this case, if the personnel action had not occurred, Greenwood's union dues would

---

1. Section 7115(a) provides in relevant part:
    If any agency has received from an employee in an appropriate unit a written assignment which authorizes the agency to deduct from the pay of the employee amounts for the payment of regular and periodic dues of the exclusive representative of the unit, the agency shall honor the assignment and make an appropriate allotment pursuant to the assignment.... Except as provided under subsection (b) of this section, any such assignment may not be revoked for a period of 1 year.

2. Section 7115(b) provides:
    An allotment under subsection (a) of this section for the deduction of dues with respect to any employee shall terminate when—
    (1) the agreement between the agency and the exclusive representative involved ceases to be applicable to the employee; or
    (2) the employee is suspended or expelled from membership in the exclusive representative.

have been withheld from his paycheck pursuant to § 7115(a) at least for the part of the Termination Period preceding the anniversary of Greenwood's authorization of dues withholding,[3] and, assuming that in the absence of dismissal he would not have revoked the authorization, for the remainder of the period.[4] According to the General Counsel, § 7115(a), applied in light of the Back Pay Act, required the VA to deduct union dues from Greenwood's back pay award for the full period of his discharge. The VA's failure to make the withholding, the General Counsel urged, constituted an unfair labor practice within the meaning of § 7116(a)(1) and (8).

The Authority rejected the General Counsel's position. First, it distinguished between payments that agencies must withhold from back pay awards without regard to the employee's wishes, and payments that agencies withhold only at the option of the employee. Courts have held that agencies must withhold from back pay awards payments the employee may not opt out of, including federal and state taxes. *See Tanaka v. Department of the Navy,* 788 F.2d 1552 (Fed.Cir.1986). Other types of deductions are withheld from an employee's paycheck only if the employee so elects. For health and life insurance programs, express statutory prescriptions afford options to the reinstated employee. In the case of life insurance, the reinstated employee "is deemed to have been insured during the period of erroneous separation or suspension," and deductions "shall not be withheld from any backpay awarded for the period of separation or suspension unless death or accidental dismemberment of the employee occurs during such period." 5 U.S.C. § 8706(d) (Supp. IV 1986). For health insurance, a reinstated employee, "may, at his option, enroll as a new employee or have his coverage restored, with appropriate adjustments made in contributions and claims, to the same extent and effect as though the removal or suspension

had not taken place." 5 U.S.C. § 8908(a) (1982).

The Authority reasoned that an employee's election to pay union dues through payroll deduction, like the election to participate in federal life or health insurance programs, is a voluntary decision. Finding that no statute or regulation required a different result, the Authority concluded that the purposes of the FSLMRS were best served by according the reinstated employee the choice of declining to reauthorize dues deductions, having his prior dues paying status restored retroactively, or reestablishing his relationship to the union as if he had been newly hired. Thus, the FLRA concluded that the VA had not committed an unfair labor practice by failing either to remit dues to the union from the back pay award for the entire Termination Period or to reinstate Greenwood's withholding status.

## II. DISCUSSION

### A. *Standard of Review*

■ We begin with the observation that we may not disturb the Authority's interpretation and application of the FSLMRS unless we find it arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law. 5 U.S.C. § 7123(c) (1982); 5 U.S.C. § 706 (1982). In determining that the VA did not violate § 7116(a)(1) or (8), the FLRA construed the statute that it administers. In such an instance, the reviewing court must determine whether " 'Congress has directly spoken to the precise question at issue' and has expressed a clear intent as to its resolution." *Natural Resources Defense Council, Inc. v. EPA,* 824 F.2d 1146, 1152 (D.C.Cir.1987) (en banc) (quoting *Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.,* 467 U.S. 837, 842, 104 S.Ct. 2778, 2781, 81 L.Ed.2d 694 (1984)). If Congress has thus expressed its will, "that intention is the law and must be given effect." *Chevron,* 467 U.S. at 843 n. 9, 104 S.Ct. at 2782 n. 9.

---

**3.** Except as provided in § 7115(b), an employee may revoke his dues withholding allotment only annually, at the time of the year when the allotment was originally authorized. § 7115(a).

**4.** Greenwood's anniversary date was March 1, *i.e.,* about six weeks after his discharge date. *See Greenwood,* 25 FLRA at 533 (decision of ALJ).

"[I]f the statute is silent or ambiguous with respect to the specific issue," then we must decide whether the FLRA's decision "is based on a permissible construction of the statute." *Id.* at 843, 104 S.Ct. at 2782. These principles ring especially true in the area of public sector labor law, where the FLRA "exercises its special function of applying the general provisions of the Act to the complexities of federal labor relations. *Bureau of Alcohol, Tobacco & Firearms v. FLRA*, 464 U.S. 89, 97, 104 S.Ct. 439, 444, 78 L.Ed.2d 195 (1983) (internal quotes omitted).

■ The Authority also grappled with the Back Pay Act. Because the Act is not part of the FLRA's organic statute, the Authority's interpretation "is entitled to respect before this court, but we are not bound by its construction of the statute even if reasonable." *Professional Airways Systems Specialists v. FLRA*, 809 F.2d 855, 857 n. 6 (D.C.Cir.1987).

### B. *The Relation between the Back Pay Act and the FSLMRS*

■ The Union concedes that the VA acted in accordance with § 7115(b) when it terminated the withholding of Greenwood's dues upon his discharge. The Union argues, however, that the Back Pay Act's "for all purposes" provision creates a legal fiction that the termination of dues withholding never occurred. As the AFGE views this case, the VA is obliged to deduct dues for the entire 26 month period between his discharge and reinstatement from the back pay award. According to the Union, it is of no consequence that had Greenwood not been discharged, he would have had the option to revoke his dues withholding allotment six weeks later.

The Union appears to assume that if Greenwood would not have been entitled under the Back Pay Act to recover withheld dues from the agency, then the VA must have engaged in an unfair labor practice when it failed to deduct the dues and pay them over to the AFGE. Conversely, the Union apparently believes, the FLRA's determination that the VA did not engage in an unfair labor practice implies a deter-

mination that the Back Pay Act would entitle Greenwood to recover withheld dues. We think that the Union misperceives the relationship between these two statutes.

We will assume *arguendo* that Greenwood would not have been entitled under the Back Pay Act to recover dues withheld by the VA for payment to the Union, at least for the six weeks of the Termination Period during which Greenwood could not have revoked the allotment. This is not an unreasonable assumption. The Back Pay Act provides that an unfairly discharged employee is entitled to the pay he "normally would have earned or received" had the discharge not occurred. 5 U.S.C. § 5596(b)(1)(A)(i) (1982). Had Greenwood not been discharged, he would not have received the dues withheld for the six week period during which he could not have revoked the allotment (though surely he would have "earned" them).

It does not follow, however, that the VA committed an unfair labor practice by paying to *Greenwood*—rather than the Union—the six weeks of dues which the Back Pay Act (given our assumption) gives him no affirmative right to collect. The Union's theory extends the Back Pay Act's "for all purposes" formula into the realm of federal labor-management relations in such a way that the VA must be held to have committed an unfair labor practice within 5 U.S.C. § 7116 of the FSLMRS by paying Greenwood more than Greenwood was entitled to receive (again according to our assumption) under the Back Pay Act. We fail to see, however, how the VA's payment to Greenwood in excess of his Back Pay Act entitlement can be said to have "interfere[d] with ... any employee in the exercise" of his rights under the FSLMRS. 5 U.S.C. § 7116(a)(1). The Authority's decision makes it clear that any reinstated employee may *exercise* his right under § 7115 to authorize dues withholding: the employee has the option of making the authorization effective retroactively from the date of termination, prospectively from the date of reinstatement, or not at all. In the instant case it is significant that Greenwood did not wish to authorize dues

withholding after his discharge. He may have gained something of a windfall, but he surely was not inhibited in asserting his rights.

Close inspection of the Back Pay Act, its structure, and the legislative history of the section in which the words "for all purposes" appear does not yield support for the Union's expansive gloss on those words. Indeed, the phrase apparently was designed solely with a view to calculation of accumulated leave.

■ The purpose of the Back Pay Act was to make an employee affected by an unjustified personnel action financially whole, *see* S.Rep. No. 1062, 89th Cong., 2d Sess. 2 (1966), or, as the Act itself said, "[t]o provide for the [1] payment of certain amounts and [2] restoration of employment benefits...." Pub.L. No. 89–380, 80 Stat. 94.

These two discrete purposes—payment of withheld compensation and restoration of employment benefits—were implemented in two separate provisions: § 3(1) and § 3(2) respectively. Thus, § 3(1) covered pay to which the reinstated employee was entitled, and § 3(2) authorized the restoration of accumulated leave. The same pay/benefits structure was retained in the Act as amended and codified in 1967, 5 U.S.C. § 5596(b)(1) & (2), *see* Pub.L. No. 90–83, 81 Stat. 203 (1967), and in the present Act, 5 U.S.C. § 5596(b)(1)(A) & (B) (1982).

The "for all purposes" language appears in § 3(2) of the Act (5 U.S.C. § 5596(b)(1)(B) as codified). According to the Senate Report, § 3(2) was included to authorize "leave accumulation [which was] excluded specifically from the back pay provisions of Section 6 of the act of August 24, 1912." S.Rep. No. 1062 at 3. *See also* H.Rep.No. 1403, 95th Cong., 2d Sess. 61 (1978). Thus § 5596(b)(1)(B) of the present Act states that a reinstated employee "for all purposes, is deemed to have performed service for the agency" during the period of his wrongful discharge, except that the employee "may not be credited with annual leave in excess of the maximum amount of leave that is authorized for the employee by law or regulation."

■ It is clear to us, therefore, that the Back Pay Act does not compel the conclusion that the VA failed to comply with § 7115 by refusing to remit retroactive dues to the Union. The Back Pay Act was intended to benefit wrongfully terminated employees, not their unions; its "for all purposes" language appears to reflect a specific congressional concern only in relation to accumulated leave. We have no warrant to extend the Back Pay Act beyond its core purpose and thereby intrude upon the FLRA's "special function of applying the general provisions of the [FSLMRS] to the complexities of federal labor relations." *Bureau of Alcohol, Tobacco & Firearms*, 464 U.S. at 97, 104 S.Ct. at 444 (internal quotes omitted). In sum, we find that nothing in the Back Pay Act or the FSLMRS compels a conclusion that an agency payment to a reinstated employee in excess of his Back Pay Act rights, rather than to the Union, "interfere[s] with" his exercise "of any right" under the FSLMRS. We therefore proceed to the one remaining question: was the FLRA's decision in *Greenwood* "based on a permissible construction of [its] statute[?]" *Chevron*, 467 U.S. at 843, 104 S.Ct. at 2782. We find the Authority's interpretation of the FSLMRS to be reasonable and coherent and therefore commanding of our respect. *See, e.g., National Treasury Employees Union v. FLRA*, 826 F.2d 114, 120–21 (D.C. Cir.1987); *AFGE v. FLRA*, 778 F.2d 850, 856 (D.C.Cir.1985).

We have earlier summarized the Authority's analysis, *see supra* pp. 552–53, and will not repeat it here. It suffices to say that we have found nothing indicating that Congress specifically intended an employee's dues withholding authorization terminated pursuant to § 7115(b)(1) to be revived automatically by the subsequent reinstatement of that employee after a finding of wrongful discharge.

The Authority's decision is not, moreover, inconsistent with Congress's treatment of deductions for life and health insurance coverage of reinstated employees.

*See* 5 U.S.C. §§ 8706(d), 8908(a) (1982 & Supp. IV 1986). The Authority concluded that the policy reflected in those statutes counselled interpreting § 7115 to allow a reinstated employee to choose whether or not to renew his dues withholding authorization. "[A]n employee's decision ... to pay union dues through checkoff is a voluntary decision like those which an employee makes regarding life insurance and health benefits." *Greenwood,* 25 FLRA at 528.

We are not convinced by the Union's argument that Congress's special treatment of life and health insurance deductions in §§ 8706 and 8908, and the lack of any similar explicit treatment of dues deductions in § 7115, show that Congress did not intend to permit a reinstated employee to determine for himself whether to renew his dues withholding authorization. The Authority's interpretation of § 7115, in view of the silence of Congress on the precise question at hand, is reasonable, and we can demand no more.

The Union further argues that the dues withholding option must be treated differently from life and health insurance options because of differences in the statutory provisions for withdrawing from those options:

> Federal employees may withdraw from the medical and life insurance programs at any point during their employment, while 5 U.S.C. § 7115 provides that a dues allotment statement will be effective for a period of one year. Thus, the [FSLMRS] provides that once the employee assumes the voluntary obligation to allot dues, the agreement cannot be abrogated for the period of one year.

Brief for Petitioner at 20–21. The Union here focuses exclusively on the provision of § 7115 that allows revocation after one year, and concludes that because it is harder to withdraw from the dues withholding option than from the health and life insurance options, the reinstated employee should be given fewer choices with regard to the former option. But § 7115 does

provide explicitly for the termination of dues withholding when, as was true in this case, "the agreement between the agency and the exclusive representative involved ceases to be applicable to the employee." 5 U.S.C. § 7115(b)(1) (1982). The issue might be posed in this way: does the employee's power to bind himself to dues withholding for a year (or, as the Union puts it, "the strong policy expressed in 5 U.S.C. § 7115(a) in favor of honoring dues allotments," Brief for Petitioner at 22) override the termination provision of § 7115(b)? The Authority's answer is that it does not. We find that interpretation permissible.

\* \* \* \* \* \*

For the foregoing reasons, the petition for review is denied.

RUTH BADER GINSBURG, Circuit Judge, concurring:

The Federal Service Labor–Management Relations Statute provides for a one-year period during which an employee's written consent to an automatic pay deduction for union dues is not revocable. 5 U.S.C. § 7115(a); *see, e.g., In re Margaret Jackson,* 59 Comp.Gen. 667 (Aug. 14, 1980) (where employee signs allotment form, she may not revoke that authorization before one year); *Dep't of the Navy, Portsmouth Naval Shipyard, Portsmouth, N.H.,* 19 FLRA 586 (1985) (same). The Federal Labor Relations Authority (FLRA), I believe, has diminished the force of that statutory prescription by allowing reinstated employees to avoid their one-year commitment.

Were I the initial decisionmaker, I would hold Greenwood's back pay award subject to the dues check off for the one-year term of his consent,[1] although not beyond that term. Such a resolution of this controversy would give effect to the worker's written assignment for which § 7115(a) provides; it would also mesh well with the Back Pay Act, which states that an employee "affected by an unjustified or unwarranted personnel action" is to be treated "for all purposes" as if he had "performed

---

1. The Union argued here that "a reinstated employee who returns to the workplace receives benefits in the form of improved conditions of employment," and noted, specifically, that "the

record reflects that the Union represented Greenwood in his appeal of his discharge before the Merit Systems Protection Board." Brief for Petitioner at 21–22.

services for the agency during [the period for which the adverse personnel action was in effect]." 5 U.S.C. § 5596(b)(1)(B). *See also id.* § 5996(b)(1)(A)(i) (reinstated employee entitled to amount he would have "earned or received during the period if the personnel action had not occurred"). The Union seeks too much, however, in demanding that the dues deduction persist beyond the one-year term of the dues withholding form Greenwood filed. Greenwood was out of work and removed from the workplace at the expiration of the term of his consent; he was not so situated as to contemplate that renewal would occur automatically if he took no formal action to discontinue the arrangement.

Congress did not advert specifically to the case of the reinstated employee, however, when it framed § 7115(a). Nor was the Back Pay Act written with a concern for unions. Given the respect we owe to the FLRA's judgment when Congress leaves room for interpretation, I cannot reject the Authority's decision as an unreasonable one. I therefore concur in the court's opinion and write separately only to emphasize that (1) the issue presented here is one the Authority might appropriately revisit; (2) preferably, from the perspective of both agencies and adjudicatory tribunals, Congress itself might provide the definitive answer by a clarifying amendment to the Labor–Management Relations Statute or the Back Pay Act.

