**NATIONAL TREASURY EMPLOYEES UNION, Petitioner,**

v.

**FEDERAL LABOR RELATIONS AUTHORITY, Respondent.**

No. 87–1166.

United States Court of Appeals, District of Columbia Circuit.

Argued March 10, 1988.

Decided June 3, 1988.

Clinton D. Wolcott, with whom Lois G. Williams, Washington, D.C., was on the brief, for petitioner.

William R. Tobey, Federal Labor Relations Authority, with whom Ruth E. Peters, Sol., William E. Persina, Deputy Sol., and Arthur A. Horowitz, Associate Sol., Federal Labor Relations Authority, Washington, D.C., were on the brief, for respondent.

Before RUTH BADER GINSBURG and WILLIAMS, Circuit Judges, and RE *, Chief Judge, United States Court of International Trade.

Opinion for the Court filed by Circuit Judge WILLIAMS.

WILLIAMS, Circuit Judge:

Once again we are called upon to review a decision of the Federal Labor Relations Authority over the scope of a federal agency's duty to bargain under the Federal Sector Labor–Management Relations Statute, 5 U.S.C. § 7101 *et seq.* (1982 & Supp. III 1985) ("FSLMRS"). The FLRA, referrecing a dispute between the National Treasury Employees Union and a section of the Department of Agriculture over whether the agency was required to bargain over seven union proposals, found four negotiable and three non-negotiable.[1] *National Treasury Employees Union & U.S. Department of Agriculture, Food & Nutrition Service, Midwest Region,* 25 F.L.R.A. 1067 (1987) (*"Food & Nutrition Service"*). The Union seeks review of the Authority's determination as to two of these. We affirm the Authority.

## I. ACCESS TO GRIEVANCE PROCEDURES FOR PROBATIONARY EMPLOYEES

The Union's Proposal 6 would amend the collective bargaining agreement to give a probationary employee the right to use negotiated grievance procedures to contest a discharge that the employee claimed to arise out of unlawful discrimination. It would have added the italicized language to § 4(a)(1) of the agreement's "Grievance Procedure Article":

This procedure shall be the exclusive procedure for resolving all grievances, but does not cover:

\* \* \* \* \* \*

(I) The termination of a probationary employee, *unless the product of unlawful discrimination.*

The Department of Agriculture resisted, invoking 5 U.S.C. § 7117(a)(1) (1982). That section limits agencies' duty to bargain to proposals "not inconsistent with any Federal law or any Government-wide rule or regulation." The Authority accepted the claim, relying on our interpretation of § 7117(a)(1) in *United States Department of Justice, INS v. FLRA,* 709 F.2d 724 (D.C.Cir.1983) (*"DOJ"*). See *Food & Nutrition Service,* 25 F.L.R.A. at 1078.

The union's proposal in DOJ would have entitled probationary employees to invoke a bargaining agreement's grievance proce-

---

* Sitting by designation pursuant to 28 U.S.C. § 293(a).

1. Proposals deemed negotiable by the Authority may be imposed on a party by the Federal Service Impasses Panel if a bargaining impasse occurs. *See* 5 U.S.C. § 7119(c)(5)(B) (1982); 5 C.F.R. § 2471.11 (1988); *Council of Prison Locals v. Brewer,* 735 F.2d 1497, 1501 & n. 6 (D.C.Cir.1984); *AFGE v. FLRA,* 712 F.2d 640, 646 & n. 24 (D.C.Cir.1983).

dure for *any* dismissal.[2] We found that the proposal conflicted with statutes and government-wide regulations stating the rights of dismissed probationary employees, namely 5 U.S.C. § 3321 (Supp. V 1981) and 5 C.F.R. §§ 315.805, 315.806 (1983) (now appearing in the 1982 U.S.Code and the 1987 Code of Federal Regulations). Thus we found the limitation of § 7117(a)(1) applicable.

NTEU's current proposal would entitle a special subset of probationary employees to use the grievance procedures declared off limits in *DOJ*. The only distinguishing feature of this subset is, as we shall see, that Congress gave them access to certain other procedures, ones generally made available to government employees asserting unlawful discrimination. We see no reason why Congress's grant of that additional option should entitle probationary employees claiming discrimination to yet another set of procedures—those that *DOJ* found were denied to probationers generally.

In *DOJ* we reviewed the legislative history of the Civil Service Reform Act of 1978, Pub.L. No. 95–454, 92 Stat. 1111 (1978) (codified in scattered sections of 5 U.S.C.) ("CSRA"), and reached two basic conclusions. First, we found that Congress affirmatively intended agencies to retain the power to summarily terminate probationary employees. Congress, we concluded, had been aware of the pre-existing system permitting summary firing, but had done nothing to alter it in the CSRA. *DOJ*, 709 F.2d at 727–28 & nn. 16, 17, & 18. Second, Congress had delegated substantial responsibility over the probationary period to the Office of Personnel Management. *Id.* at 728. Under that authority, OPM had adopted regulations allowing agencies to dismiss probationary employees with only written notice and a brief statement of reasons, *see* 5 C.F.R. §§ 315.804 & 315.805, and an exceedingly limited right to appeal, *see* 5 C.F.R. § 315.806. *Id.* at 728. These regulations, which contrast sharply with the elaborate statutory procedural protections provided for non-probationary em-

ployees in the CSRA, were in line with prior practice. *Id.* at 728 n. 16.

From these two premises, we concluded that the union's proposal was inconsistent with Congress's intention that agencies have the power summarily to terminate probationary employees:

> Since [the FSLMRS] mandates that all negotiated grievance procedures provide for binding arbitration, the [discharged] employee would then have the right to contest the agency's reasons before an arbitrator. The arbitrator, in turn, could reject the agency's reasons and order the employee reinstated.

*Id.* at 728 (footnote omitted). We thus found the proposal "flatly inconsistent with OPM's regulations." *Id.*

■ We review the Authority's decision on the issue *de novo*. Although we must give considerable deference to the Authority's construction of its enabling statute, *see* p. 10 below, we need not defer to its interpretation of other statutes, *AFGE, Local 1843 v. FLRA*, 843 F.2d 550, 553 (D.C.Cir. 1988); *United States Department of Justice, INS v. FLRA*, 709 F.2d 724, 729 n. 21 (D.C.Cir.1983), such as the portions of the CSRA other than FSLMRS, or to its construction of regulations promulgated by other agencies, such as OPM.

■ We think the Authority's application of *DOJ* to this case entirely correct. To allow the mere allegation of discrimination to give a discharged probationary employee access to the grievance procedure, with the concomitant power of the arbitrator to order reinstatement, would substantially thwart Congress's intention to allow summary termination of probationary employees.

The Union tries to distinguish *DOJ* on the basis that there we referred to the right of agencies to fire probationary employees *for unacceptable work performance or conduct*, not to a general power to fire probationers. It thus suggests that, because agencies have no right to dismiss

---

**2.** The proposal at issue in *DOJ* read in full: "Termination of probationary employees shall be grievable on the basis of whether [INS's]

actions were reasonable and not arbitrary and capricious, notwithstanding any other provision of this Agreement." *DOJ*, 709 F.2d at 726.

employees for discriminatory reasons comparable to their right to dismiss for performance, *DOJ* is inapplicable. Union Brief at 12–14. It is true that *DOJ* appeared to relate agencies' right to fire probationers to poor performance or unacceptable conduct. *See DOJ*, 709 F.2d at 728–30. But in writing the opinion in *DOJ* Judge Wright doubtless remained fully aware that agencies' discretion over probationary employees was *substantively* limited by rules against dismissal for explicitly forbidden reasons. The court could hardly have intended an exception whenever an employee invoked that substantive limit; such an exception would eviscerate Congress's intention that collective bargaining not supplement probationers' existing procedural protections.

The Union also attempts to resurrect a point firmly disposed of in *DOJ*. Apparently relying on the unrestricted interpretations of "employee" and "grievance" in the FSLMRS, *see* 5 U.S.C. §§ 7103(a)(2) & 7103(a)(9), the Union contends that "unless the parties explicitly agree to exclude *discriminatory* terminations, they are properly grievable" under 5 U.S.C. § 7121(a). Union Brief at 20 (emphasis in original). Thus, the Union argues, probationers already have the right to use the grievance procedure to contest discriminatory acts, and Proposal 6 merely restates existing law. *Id.* This argument misses the whole point of *DOJ*. There we concluded that Congress in the CSRA had affirmatively *preserved* agencies' right to fire probationers with minimal procedural obstacles. *See DOJ*, 709 F.2d at 729. We specifically rejected the notion that because Congress had not specifically excluded probationary employees from the broad definitions of "employee" and "grievance," it must have intended to permit negotiation over the termination of probationary employees. *Id.* at 729–30 & n. 22. Rather, the court said, both § 7121 and § 3321 must be read in light of past practice to carry out Congress's expressed intent for the probation-

ary period. *Id.* at 729 n. 22. Thus we have already rejected the Union's argument that existing statutes give probationers access to grievance procedure.

The Union is left, finally, with the odd argument that probationers' right not to be discriminated against, provided by 42 U.S.C. § 2000e–16(a), implies the availability of a particular remedy: the negotiated grievance procedure. Union Brief at 9–11. In fact § 2000e–16 and the regulations promulgated thereunder lay out an elaborate—and quite different—procedure for federal employees and applicants for employment to raise claims of discrimination based on race, color, religion, sex, or national origin. *See* 29 C.F.R. § 1613.201 *et seq.* (1987).[3] No one disputes that probationers fall within the ambit of § 2000e–16 or its accompanying regulations. *See* FEDERAL PERSONNEL MANUAL, ch. 315, § 8–5 at 315–36. Thus, like all other federal employees, a probationer who alleges discrimination is entitled to an impartial investigation of the complaint within the agency by the agency's Director of Equal Employment Opportunity, 29 C.F.R. § 1613.216, to a hearing before an Administrative Law Judge, 29 C.F.R. § 1613.218, to a decision by the agency head (or his designee) based on the complaint file, 29 C.F.R. § 1613.221, and finally to an appeal to the EEOC itself, 29 C.F.R. § 1613.231. Both the agency and the EEOC are authorized by the statute and regulations to award reinstatement, promotion, and backpay to make victims of discrimination whole. *See* 42 U.S.C. § 2000e–16(b); 29 C.F.R. § 1613.271. The employee may file a civil action for relief in district court at any one of four separate points in the process: (1) within 30 days of a decision by the agency; (2) within 30 days of the EEOC's decision; (3) after a complaint has been pending with the agency for 180 days; or (4) after a complaint has been pending with the EEOC for 180 days. 42 U.S.C. § 2000e–16(c); 29 C.F.R. § 1613.281. Moreover, probationers have the right under applicable OPM regulations

---

**3.** Prior to the CSRA, probationers could raise discrimination claims through an administrative procedure administered by the Civil Service Commission. *See* 5 C.F.R. § 315.806 (1976).

The EEOC took over these responsibilities following the passage of the CSRA. *See* Reorganization Plan No. 1 of 1978, 43 Fed.Reg. 19,807 (1978).

to appeal dismissals based on certain forms of discrimination to the Merit Systems Protection Board. *See* 5 C.F.R. § 315.806. In short, Congress has explicitly provided probationers with forums and remedies to enforce their indisputable right not to be the victim of invidious discrimination by federal employers.

It may well be true, as the Union suggests, that a probationer would find the negotiated arbitration procedure speedier, cheaper, less formal, and less cumbersome. *See* Supplemental Memorandum of Union at 6. Perhaps also probationers would win more often. But Congress determined in the CSRA that "summary terminations [are] essential to an effective and efficient service," *DOJ*, 709 F.2d at 730, and that a single additional forum available to other federal employees—a negotiated grievance procedure—would remain unavailable to probationers. *DOJ*, 709 F.2d at 729. The Authority's decision properly paid heed to Congress's decision in the CSRA and ours in *DOJ*.

## II. NEGOTIATIONS REGARDING KSAS

■ The Union's Proposal 5 bears upon the Department's ability to establish or alter selection factors used to evaluate applicants for vacant positions. The factors, known in civil service lingo as "knowledge, skills, and abilities" or simply "KSAs," are established by the Department to supplement more general government-wide standards for various jobs. *See* FEDERAL PERSONNEL MANUAL, ch. 335, § 1–2 at 335–3. The proposal states in full:

> If there are no established KSA's, or if the employer desires to change the KSA's, then, prior to filling any vacancy covered by this article, the employer will submit the proposed changes to the union. The union will have ten (10) days from the date of receipt to request negotiations.

*Food & Nutrition Service*, 25 F.L.R.A. at 1075.

If one construes this as authorizing negotiations over the content of the KSAs, as the Department and the Authority both did, there can be no serious question that it interferes with management prerogatives that 5 U.S.C. § 7106 exempts from mandatory bargaining, namely its exclusive authority to make selections for appointments. *See* 5 U.S.C. § 7106(a)(2)(C). In *National Federation of Federal Employees, Local 1745 v. FLRA*, 828 F.2d 834 (D.C.Cir.1987) ("*NFFE*"), this court held that § 7106(a)(2)(C) preserved management's exclusive authority not only to draw candidates from a pool but also to establish the criteria by which the pool was formed —the KSAs. *NFFE*, 828 F.2d at 838. *NFFE* also agreed with the Authority that the proposal for union participation in the drafting of KSAs did not fit into the exception, provided in 5 U.S.C. § 7106(b)(2), for proposals concerning only "procedures," as the proposal would "directly interfere" with powers reserved to management in § 7106(a). *Id.* at 840–43. *See also National Federation of Federal Employees, Local 1497 and Headquarters, Lowry Technical Training Center (ATC), Lowry Air Force Base, Colorado*, 11 F.L.R.A. 565, 568 (1983) ("*Lowry Air Force Base*") (Authority decision holding that development of selection factors is part of management's right to select under § 7106(a)). *Cf. Department of Defense v. FLRA*, 659 F.2d 1140, 1159 (D.C.Cir.1981) (management right to hire employees under § 7106(a)(2)(A) includes right to formulate selection criteria), *cert. denied*, 455 U.S. 945, 102 S.Ct. 1443, 71 L.Ed.2d 658 (1982).

The Union now concedes that under § 7106(a)(2)(C) and *NFFE* it has no right to bargain about the *substance* of selection factors. Union Brief at 23. It attempts to avoid *NFFE*, however, by interpreting its proposal very narrowly: Proposal 5, it contends, would put in place only "a *procedure* through which it could request *impact negotiations* on management's decision to change the standards used for selecting among applicants for a position." Union Brief at 22 (emphasis added). These subjects, it says, are subject to bargaining under § 7106(b)(2), which preserves as a subject of bargaining "procedures" to be observed by management in implementing authority reserved under § 7106(a), and un-

der § 7106(b)(3), which similarly preserves "appropriate arrangements for employees adversely affected" by the exercise of management's reserved authority. *Id.* at 23–24.

The Authority rejected the Union's interpretation of the proposal and agreed with the Department that it subjected the substance of KSAs to negotiation. *Food & Nutrition Service,* 25 F.L.R.A. at 1076. Relying on its past decision in *Lowry Air Force Base,* the Authority held that the proposal so interpreted would directly interfere with the Department's § 7106(a)(2)(C) right to make selections for appointments. *Id.*

We review the Authority's interpretation of the FSLMRS with considerable deference, as Congress delegated to the Authority the "special function of applying the general provisions of the [FSLMRS] to the complexities of federal labor relations." *Bureau of Alcohol, Tobacco & Firearms v. FLRA,* 464 U.S. 89, 97, 104 S.Ct. 439, 444, 78 L.Ed.2d 198 (1983) (internal quotes omitted); *see also* 5 U.S.C. § 7123(c) (1982); 5 U.S.C. § 706 (1982); *AFGE v. FLRA,* 840 F.2d 947, 955 (D.C.Cir.1988). This deference certainly applies to its construction of proposals for negotiation.

We think the Authority's construction more than reasonable here. The proposal's words do not limit bargaining over KSAs to "procedures", "impact", or "implementation." Rather, it states simply and broadly that the Department must submit any new or changed KSAs for possible "negotiations" with the Union. As negotiation over the content of KSAs is not excluded from the proposal, the Authority quite reasonably concluded that content would be fair game in future bargaining.

Indeed, the Union's own statements to the Authority as to the meaning of its proposal suggest an interpretation broader than the one they advance here. In a letter accompanying its request that the Authority determine the negotiability of the proposal, the Union stated, "[Proposal 5] involves our right to negotiate over changes in working conditions, e.g. KSA's. *This clause does not settle what is negotiable,*

*e.g., substance versus impact or implementation.*" J.A. at 1 (emphasis added). Thus the proposal appears to be a sort of camel's nose—thin to get into the tent of bargainability, but subject to growth at the Union's election once inside. We think the Authority's interpretation plainly reasonable.

\* \* \*

The Authority's decision on grievance procedures for probationary employees was correct, and its decision on KSA negotiations was based on a permissible reading of the Union's proposal. We deny the petition for review.