**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 12-2574**

NATIONAL TREASURY EMPLOYEES UNION,

Petitioner,

v.

FEDERAL LABOR RELATIONS AUTHORITY,

Respondent.

On Petition for Review of an Order of the Federal Labor
Relations Authority. (0-NG-3158)

Argued: October 29, 2013          Decided: December 6, 2013

Before TRAXLER, Chief Judge, and WILKINSON and FLOYD, Circuit
Judges.

Petition denied by published opinion. Judge Wilkinson wrote the
opinion, in which Chief Judge Traxler and Judge Floyd joined.

**ARGUED**: Peyton H.N. Lawrimore, NATIONAL TREASURY EMPLOYEES
UNION, Washington, D.C., for Petitioner. Zachary Robert Henige,
FEDERAL LABOR RELATIONS AUTHORITY, Washington, D.C., for
Respondent. **ON BRIEF**: Gregory O'Duden, General Counsel, Larry
J. Adkins, Deputy General Counsel, NATIONAL TREASURY EMPLOYEES
UNION, Washington, D.C., for Petitioner. Rosa M. Koppel,
Solicitor, FEDERAL LABOR RELATIONS AUTHORITY, Washington, D.C.,
for Respondent.

WILKINSON, Circuit Judge:

The National Treasury Employees Union (NTEU) sought to amend its collective bargaining agreement with the Internal Revenue Service (IRS) to permit probationary employees to use the agreement's grievance procedures to challenge removals alleged to be in violation of statutory rights or procedures. The IRS refused to negotiate over NTEU's proposal on the grounds that the proposal would grant probationary employees greater procedural protections than were authorized under law and regulation. NTEU appealed to the Federal Labor Relations Authority (FLRA), which held for the IRS. NTEU now asks us to reverse the FLRA and find its proposal negotiable. We decline to do so because such a decision would ignore both the statutory and regulatory frameworks that Congress and the executive branch have put in place, create a stark circuit split, and overturn nearly thirty years of settled public-employee practice.

I.

A.

Most federal agencies, including the IRS, are required by law to "negotiate in good faith" with public-sector unions "for the purposes of arriving at a collective bargaining agreement." 5 U.S.C. § 7114(a)(4); see also id. § 7103(a)(3) (defining "agency"); id. § 7116(a)(5) (listing the refusal to negotiate in

2

good faith as an unfair labor practice); NRC v. FLRA, 25 F.3d 229, 231 (4th Cir. 1994). Such agreements must, subject to certain limited exceptions, contain "procedures for the settlement of grievances, including questions of arbitrability." 5 U.S.C. § 7121(a)(1). A "grievance" encompasses "any complaint . . . by any employee concerning any matter relating to the employment of the employee." Id. § 7103(a)(9). However, 5 U.S.C. § 7117 limits the good-faith-negotiation requirement to provisions that are "not inconsistent with any Federal law or any Government-wide rule or regulation." Id. § 7117(a)(1); see also NRC, 25 F.3d at 231.

Within the competitive service -- that part of the civil service whose members are generally selected by open and competitive examination, see 5 U.S.C. §§ 2102(a)(1), 3304(a), (b) -- federal law distinguishes between probationary and non-probationary employees. 5 U.S.C. § 3321 permits the President to set up a "period of probation" for new employees "before an appointment in the competitive service becomes final." Id. § 3321(a).

The Office of Personnel Management (OPM) is tasked with establishing the rules for the competitive service. Id. § 1301. Pursuant to its authority, OPM has codified the rules for probationary employees at 5 C.F.R. part 315, subpart H (§§ 315.801-315.806). The rules set the length of the

3

probationary period at a non-extendable one year from the start of employment, 5 C.F.R. §§ 315.801(a), 315.802(a), and grant probationary employees some protections against removal, such as notice of a pending removal and limited rights of appeal to the Merit Systems Protection Board (MSPB), id. §§ 315.804(a), 315.805, 315.806. The rules do not affirmatively grant probationary employees the right to grieve removals alleged to be in violation of statutory rights or procedures.

B.

NTEU sought to amend its existing collective-bargaining agreement with the IRS to permit probationary employees to grieve removals where "the grievance is confined to enforcing the procedures or rights contained in a statute, and any subsequent arbitration decision is controlled solely by the requirements of law and government-wide regulation such that the arbitrator is merely substituting for the federal authority that would hear the employee's challenge." NTEU, 67 F.L.R.A. 24, 24 (2012) (emphasis added).

The IRS refused to negotiate over NTEU's proposal, arguing that it was outside § 7117's duty to negotiate because it was "contrary to law and regulation." Id. The IRS argued that, based on D.C. Circuit and FLRA precedent, probationary employees may not grieve removals as a matter of law, and that such a

4

procedure would be contrary to the OPM regulations.  Id. at 24-25.

NTEU appealed to the FLRA, which ruled in favor of the IRS. The FLRA cited nearly three decades of FLRA precedent holding that collective-bargaining proposals violate § 3321 and the OPM regulations to the extent they "grant probationary employees: (1) separation-related procedural protections beyond those required by statute or OPM regulations; or (2) the ability to grieve separation disputes."  Id. at 26.  Such proposals thus fall outside of § 7117's good-faith-negotiation requirement. Relying upon two decisions by the D.C. Circuit, NTEU v. FLRA, 848 F.2d 1273 (D.C. Cir. 1988), and INS v. FLRA, 709 F.2d 724 (D.C. Cir. 1983), the FLRA reasoned that while probationary employees have some rights to challenge removals in certain administrative and judicial forums, they are authorized to "receive only minimal due process in connection with their separation," which does not include the right to grieve removals.  Id. (internal quotation marks omitted).

NTEU appeals the FLRA's decision.  We must uphold the decision "unless it is arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law."  NTEU v. FLRA, 647 F.3d 514, 517 (4th Cir. 2011).  NTEU contends that we should not defer to the FLRA's interpretations of the OPM regulations.  It argues that the regulations are outside the

5

FLRA's organic statute and regulatory domain, and are thus "beyond the [FLRA's] special area of expertise." Appellant's Br. at 9 (citing Shanty Town Assoc. Ltd. P'ship v. EPA, 843 F.2d 782, 790 n.12 (4th Cir. 1988)). The FLRA responds that "[d]ue deference is paid to an FLRA determination of negotiability," Appellee's Br. at 8 (quoting NRC v. FLRA, 895 F.2d 152, 154 (4th Cir. 1990)), while the FLRA's interpretations of law outside its organic statute and implementing regulations should be followed "to the extent the reasoning is 'sound,'" id. (quoting Ass'n of Civilian Technicians, Tex. Lone Star Chapter 100 v. FLRA, 250 F.3d 778, 782 (D.C. Cir. 2001)). We need not entertain the question of the specific level of deference the FLRA should receive when interpreting the OPM regulations, however, inasmuch as we conclude that the FLRA's interpretation of the relevant law and regulations was correct.

## II.

NTEU's argument is simple. Because Congress did not exclude probationary employees from the definitions of "employee" and "grievance" in 5 U.S.C. § 7103(a)(2), (a)(9), probationary employees are generally covered by the grievance procedure. And because Congress explicitly excluded some disputes from the procedure -- such as those over examinations, certifications, or appointments, id. § 7121(c)(4), or removals

6

for national-security reasons, id. § 7121(c)(3); see also id. § 7532 -- but did not explicitly exclude disputes over removals generally, probationary employees should be able to grieve such disputes where the removals are alleged to be in violation of statutory rights or procedures. See Appellant's Br. at 10-11. As we explain below, this reading of the statute runs counter to the whole statutory and regulatory scheme governing probationary employees.

A.

Congress has provided for a probationary period since it created the modern civil-service system with the 1883 Pendleton Act, 22 Stat. 403, ch. 27 (amended 1978). See 22 Stat. 404, ch. 27, § 2(4); see also Kato v. Ishihara, 360 F.3d 106, 113 (2d Cir. 2004); INS v. FLRA, 709 F.2d 724, 725 n.1 (D.C. Cir. 1983). Congress's continuing belief in the importance of a probationary period was reflected in the passage of the Civil Service Reform Act of 1978 (CSRA), 5 U.S.C. §§ 7101-7135, which both preserved the probationary period for new employees and expanded it to cover new appointments to managerial and supervisory positions. Compare 5 U.S.C. § 3321 (1976) (authorizing the creation of a "period of probation before an appointment in the competitive service becomes absolute"), with 5 U.S.C. § 3321(a) (1982) (authorizing the creation of a probationary period for both new

7

employees and appointments to managerial and supervisory positions).

As the term "probationary" implies, employees so designated are on probation and subject to summary dismissal. They are, of course, just as entitled to be free of illegal or discriminatory treatment from their employers as are non-probationary employees, and thus NTEU is correct in arguing that its proposal "is not designed to provide any substantive legal protections to probationary employees that do not already exist." Appellant's Br. at 19.

This does not mean, however, that Congress intended for the same remedies to be available to probationary and non-probationary employees. See NTEU v. FLRA (NTEU II), 848 F.2d 1273, 1276 (D.C. Cir. 1988). This is reflected in the numerous ways that the law treats probationary and non-probationary employees differently. For example, probationary employees are explicitly excluded from the protections against demotion or removal for unacceptable performance under 5 U.S.C. § 4303. See 5 U.S.C. § 4303(f)(2). These protections include written notice thirty days in advance of the adverse employment action, representation "by an attorney or other representative," and a final written decision. Id. § 4303(b)(1). Probationary employees are not afforded the full rights that non-probationary employees have to appeal a removal or demotion for unacceptable

8

performance to the MSPB. See id. § 4303(e). Similarly, probationary employees do not possess the protections granted to non-probationary employees against removals for such reasons "as will promote the efficiency of the service." Id. § 7513(a); see also id. § 7511(a)(1)(A)(i). As the D.C. Circuit has recognized, "The substantial protections that Congress made available only to tenured employees indicate that Congress recognized and approved of the inextricable link between the effective operation of the probationary period and the agency's right to summary termination." INS, 709 F.2d at 728.

Numerous other courts have recognized the important distinction between probationary and non-probationary employees and Congress's intention to provide fewer protections to the former. See, e.g., Bante v. MSPB, 966 F.2d 647, 650 (Fed. Cir. 1992) ("The language of the current statute establishes that Congress clearly intends review of the termination of probationary employees be more limited than that of other employees."); Booher v. USPS, 843 F.2d 943, 945 (6th Cir. 1988) ("Congress, in enacting 5 U.S.C. § 7511, did not provide federal remedies for probationary postal workers nor the full panoply of administrative remedies as in the case of non-probationary workers."); United States v. Connolly, 716 F.2d 882, 886 (Fed. Cir. 1983) (noting that "Congress could have permitted probationers to challenge removals [in the Court of Federal

9

Claims], but expressly declined to do so"); Budnick v. MSPB, 643 F.2d 278, 279 n.2 (5th Cir. Unit B 1981) (per curiam) (characterizing the "distinction between probationary and tenured employees" as "sharp").

Congress's intention to grant probationary employees fewer procedural protections against removal is clearly expressed in the legislative history of the CSRA. As the Senate report explains, "The probationary or trial period . . . is an extension of the examining process to determine an employee's ability to actually perform the duties of the position. It is inappropriate to restrict an agency's authority to separate an employee who does not perform acceptably during this period." S. Rep. 95-969, at 45 (1978). NTEU argues that, while this language might support excluding removals for poor performance from the grievance procedure, "it provides no evidence of a congressional intent to prevent probationers from filing grievances to protest removals in violation of statutorily conferred rights." Appellant's Br. at 15. NTEU's position ignores the real-world result of its proposal: through artful pleading, employees faced with a merit-based dismissal could impose substantial costs on their employers by alleging insubstantial statutory violations to access the grievance procedures. Thus, NTEU's proposal would "substantially thwart

10

Congress's intention to allow summary termination of probationary employees." NTEU II, 848 F.2d at 1275.

B.

The Office of Personnel Management is the agency charged with implementing Congress's intent. See 5 U.S.C. § 1301; INS, 709 F.2d at 725 n.3. Pursuant to its statutory authority to administer the competitive service, OPM has issued regulations regarding the probationary period. OPM's regulations faithfully reflect Congress's intention for the probationary program. Granting probationary and non-probationary employees different procedural protections is necessary to accomplish the probationary period's purpose, which the regulations describe: "to determine the fitness of the employee and . . . terminate his services during this period if he fails to demonstrate fully his qualifications for continued employment." 5 C.F.R. § 315.803(a).

In order to balance the rights of probationary employees against unlawful removals with the government's need for flexibility and discretion in removing them, OPM has explicitly granted probationary employees a number of protections. They are entitled to written notification and explanation of a dismissal for unsatisfactory performance or conduct, id. § 315.804(a), as well as notice of a proposed removal, opportunity for reply, and notice and explanation for the

11

removal in cases where the removal is based in whole or in part on conditions arising before the probationer's employment, id. § 315.805. Probationary employees also have limited rights of appeal to the MSPB: they may challenge removals based on partisan political reasons or marital status; improper procedures; or other forms of discrimination, if such discrimination is accompanied by terminations based on partisan politics, marital status, or improper procedure. Id. § 315.806.

Two features stand out from this review of OPM regulations regarding probationary employees. First, the regulations are extensive, encompassing a wide range of disputes and remedial procedures. They give probationary employees both fair notice of removal and the right to appeal those removals in certain circumstances. Second, they sharply limit probationary employees' rights to challenge removals. In doing so, they preserve a meaningful distinction between probationary and non-probationary employees in accordance with the language and purpose of the statutory scheme. The structure of the OPM regulations indicates that any additional protections not explicitly provided for -- such as those in NTEU's proposal -- would conflict with the regulations and thus be outside the IRS's bargaining obligations.

NTEU correctly observes that probationary employees have remedial options beyond those granted by OPM. See Appellant's

12

Br. at 16-17. Indeed, in some contexts their avenues for relief are much the same as those afforded non-federal employees. They may file charges of unfair labor practices with the FLRA's general counsel, see 5 U.S.C. § 7118(a)(1), and may file complaints of discrimination with the Equal Employment Opportunity Commission and ultimately in federal court, see 42 U.S.C. § 2000e-16(c); 29 C.F.R. § 1614.407. The availability of these remedies, however, does not imply the permissibility of other remedies, among which is NTEU's proposed expansion of the grievance procedure.[*] In sum, Congress has clearly granted certain remedies to all employees, including probationary ones. By contrast, Congress refrained from granting probationary employees the right to grieve removals in violation of statutory rights or procedures, thereby giving OPM, which prescribes the rules for the competitive service, the discretion whether or not to grant such a right. If we were to step in and declare proposals to grieve such allegations negotiable, when neither

---

[*] NTEU cites the Supreme Court's recognition of a "liberal federal policy favoring arbitration agreements" to support its position. Appellant's Br. at 24 (quoting Gilmer v. Interstate/Johnson Lane Corp., 500 U.S. 20, 25 (1991)); see also id. at 24-25 (citing pro-arbitration language in 14 Penn Plaza LLC v. Pyett, 556 U.S. 247 (2009)). But that general principle, articulated in a case between private parties under a different statute and having nothing to do with the unique employment status of federal probationary employees, can hardly require a federal agency to negotiate over a proposal that, as here, would clearly violate law and regulation.

Congress nor OPM has done so, we would risk unraveling what, by any measure, is a meticulously crafted statutory and regulatory scheme.

## III.

We are not the first court to arrive at this outcome. The District of Columbia Circuit addressed this issue in a pair of cases more than twenty-five years ago. It came to the same result we arrive at today, and we find no reason to quarrel with or depart from its conclusions.

The D.C. Circuit first addressed the availability of grievance procedures for probationary employees challenging removals in INS v. FLRA, 709 F.2d 724 (D.C. Cir. 1983). In that case, the INS labor union proposed that probationary employees be able to grieve all removals on the basis of whether they were "reasonable and not arbitrary and capricious." INS, 709 F.2d at 726 (internal quotation marks omitted). The FLRA had ruled that permitting probationary employees to grieve terminations would not violate the statutory scheme, and thus that INS was required to negotiate over the proposal. In reversing the FLRA, the D.C. Circuit emphasized Congress's intent to provide probationary employees with fewer protections against removal and the incompatibility of the union's proposal with that goal. See id. at 728-29. As have we, it quoted from the Senate report in

14

concluding that Congress did not intend to impede the ability of managers to summarily dismiss probationary employees.  See id. at 727–28.

The court revisited the issue five years later, in NTEU v. FLRA (NTEU II), 848 F.2d 1273 (D.C. Cir 1988).  In that case, NTEU had proposed a provision, very similar to the one at issue here, allowing probationary employees to grieve removals that were "the product of unlawful discrimination."  NTEU II, 848 F.2d at 1274 (emphasis and internal quotation marks omitted). The D.C. Circuit again rejected the proposed expansion of probationary employees' grievance rights.  It held, as it had in INS, that Congress's failure to exclude probationary employees from the definitions of "employee" and "grievance" in 5 U.S.C. § 7103(a) did not imply that probationary employees could grieve removals alleged to be discriminatory.  Instead, it read the relevant sections against the background of "Congress's expressed intent for the probationary period," which included "agencies' right to fire probationers with minimal procedural obstacles."  Id. at 1276.

While accepting INS, NTEU argues that NTEU II was wrongly decided.  It bases its criticism of NTEU II in large part on the claim that the NTEU II court failed to consider the Senate report language that underlay the INS decision.  NTEU argues that this language was limited to removals for poor performance

15

rather than those alleged to be in violation of statutory rights or procedures. See Appellant's Br. at 15. But, as we have already explained, see ante at 10, this argument ignores the reality that permitting probationary employees to grieve removals based on a mere allegation of violation of statutory rights or procedures would eviscerate the entire purpose of the probationary program.

We agree fully with the approach and outcome of the aforementioned opinions, as have several of our sister circuits. See Yates v. Dep't of the Air Force, 115 F. App'x 57, 58-59 (Fed. Cir. 2004) (per curiam) (quoting INS approvingly); HHS v. FLRA, 858 F.2d 1278, 1284-85 (7th Cir. 1988) (citing INS and NTEU II approvingly). But even were our judgment more ambivalent, there would be costs in this area to holding differently and creating a circuit split. To give probationary employees different procedural rights depending on the circuit in which they live or work would create confusion and inequity in the federal civil service. See 5 U.S.C. § 7123(a) (permitting appeals of FLRA orders in the circuit "in which the person resides or transacts business"). Nothing in law commands such disregard of practicality, and the practical drawbacks of petitioner's position are substantial.

IV.

Finally, the issue of administrative precedent counsels in favor of upholding the FLRA. NTEU would have us upset nearly thirty years of FLRA decisions holding that probationary employees are not permitted under law or regulation to grieve removals. See, e.g., NFFE, Local 29, 20 F.L.R.A. 788, 790 (1985); SSA, 14 F.L.R.A. 164, 164-65 (1984). The FLRA has reasserted this holding numerous times since those early decisions. See, e.g., NTEU Chapter 103, 66 F.L.R.A. 416, 418 (2011); NTEU, 45 F.L.R.A. 696, 718 (1992).

The uniform course of court and agency decisions has made it clear for decades that probationary employees cannot grieve separation disputes, including those alleging violations of statutory rights or procedures. Both Congress and OPM understand this and have taken no action over these many years to change this reality. There is value in having settled practice remain settled practice, especially when the bodies that have every right to change it have made no move to do so.


V.

For the foregoing reasons, we hold that NTEU's proposal was contrary to law and regulation and thus outside the IRS's

17

statutory duty to negotiate.  The NTEU's petition for review is hereby denied.

PETITION DENIED