944 F.2d 922
 138 L.R.R.M. (BNA) 2225, 292 U.S.App.D.C. 1
 AMERICAN FEDERATION OF GOVERNMENT EMPLOYEES, AFL-CIO, LOCAL
3882, Petitioner,
v.
FEDERAL LABOR RELATIONS AUTHORITY, Respondent,
United States Department of Justice, Bureau of Prisons, Intervenor.
UNITED STATES DEPARTMENT OF JUSTICE, BUREAU OF PRISONS, Petitioner,
v.
FEDERAL LABOR RELATIONS AUTHORITY, Respondent,
American Federation of Government Employees, AFL-CIO, Local
3882, Intervenor.
 Nos. 88-1375, 88-1491.
 United States Court of Appeals,
 District of Columbia Circuit.
Argued Feb. 14, 1989.
Decided Sept. 3, 1991.
As Amended Oct. 7, 1991.
 
 Petitions for Review of an Order of the Federal Labor Relations Authority.
 Martin R. Cohen, with whom Mark D. Roth was on the brief, for petitioner in No. 88-1375 and intervenor in No. 88-1491.
 Joan E. Hartman, Atty., Dept. of Justice, with whom John R. Bolton, Asst. Atty. Gen., Dept. of Justice, Jay B. Stephens, U.S. Atty., and William Kanter, Atty., Dept. of Justice, were on the brief, for petitioner in No. 88-1491 and intervenor in No. 88-1375.
 Robert J. Englehart, Atty., Federal Labor Relations Authority, with whom William E. Persina, Acting Sol., Federal Labor Relations Authority, was on the brief, for respondent in Nos. 88-1375 and 88-1491. Ruth Peters also entered an appearance for respondent in No. 88-1375.
 Before EDWARDS and SENTELLE, Circuit Judges, and ROBINSON, Senior Circuit Judge.
 Opinion for the Court filed by Senior Circuit Judge SPOTTSWOOD W. ROBINSON, III.
 Dissenting opinion filed by Circuit Judge SENTELLE.
 SPOTTSWOOD W. ROBINSON, III, Senior Circuit Judge:
 
 
 1
 The Back Pay Act[1] authorizes conditionally an award of reasonable attorneys' fees to a federal agency employee affected by an unjustified or unwarranted personnel action resulting in a loss of pay.[2] We are asked to decide whether the Act entitles two staff attorneys of the American Federation of Government Employees, AFL-CIO, Local 3882, to fees for representing a union member in grievance and unfair labor practice proceedings, and, if so, whether the fees should be based upon the prevailing market rate or the cost to the union. We hold that, in the circumstances presented here, the attorneys should be allowed market-rate fees.
 
 I. THE BACKGROUND
 
 2
 A. The Grievance and Unfair Labor Practice Proceedings
 
 
 3
 The genesis of this litigation was the Bureau of Prisons' discharge of Richard Frontera, a cook-foreman at the federal correctional institution in Ray Brook, New York, "for intimidating and physically abusing a prisoner, and for failing to report a possible breach of prison security."[3] Frontera invoked the grievance procedure erected in the union's collective bargaining agreement with the Bureau and the union, on Frontera's behalf, took the matter to arbitration.[4] The arbitrator concluded that Frontera's misconduct warranted discipline but reduced the penalty to a sixty-day suspension, and ordered backpay and reinstatement of Frontera in his "regular job" thereafter.[5] The Bureau refused to reinstate Frontera at Ray Brook;[6] instead, it assigned him to the federal penitentiary in Lewisburg, Pennsylvania.[7] On the union's application, the arbitrator made clear that Frontera was to be returned to the Ray Brook facility and none other,[8] but the Bureau would not obey.[9]
 
 
 4
 The union then lodged with the General Counsel of the Federal Labor Relations Authority (FLRA)[10] a charge that the Bureau's refusal to comply with the clarified arbitral order was an unfair labor practice.[11] A complaint issued, naming the union as the charging party, and the matter went to hearing before an administrative law judge,[12] who ordered Frontera's reinstatement at Ray Brook with backpay.[13] On appeal, FLRA affirmed,[14] and later was upheld in court.[15]
 
 B. The Fee Litigation
 
 5
 Two lawyers, Gay H. Snyder and Martin R. Cohen, moved FLRA for attorneys' fee allowances under the Back Pay Act for their representation of Frontera and the union in the forerunning proceedings.[16] In the beginning, both Snyder and Cohen were employed and salaried by the union; later, Snyder entered private practice but continued on retainer by the union.[17] The Bureau's sole objection to the fee applications was that they were untimely and improperly submitted.[18]
 
 
 6
 An administrative law judge found that the applications were timely and properly filed, and that all statutory preconditions had been met.[19] He directed payment of fees to Snyder and Cohen on a cost basis for work done as union-salaried lawyers, and to Snyder at the market rate for her services while retained.[20] On appeals to FLRA,[21] the Bureau opposed the award in its entirety while the union contended for market-rate fees for the services rendered as staff attorneys.[22] Neither party was successful,[23] and each seeks review in this court.[24]
 
 II. THE CIVIL SERVICE REFORM ACT
 
 7
 In 1978, Congress restructured the federal civil service system by acceptance of a reorganization plan[25] and adoption of the Civil Service Reform Act of 1978.[26] "The reorganization plan [made] the major structural changes in the civil service system, while the legislation implement[ed] the policy changes President Carter [felt] essential to reforming the Federal personnel system,"[27] " 'comprehensively overhaul[ing] the civil service system' "[28] and "creating an elaborate 'new framework for evaluating adverse personnel action against [federal employees].' "[29] Prominent among these reforms were abolition of the 95-year-old Civil Service Commission and enlargement, splitting and redistribution of its former jurisdiction to three newly-created agencies. A Merit Systems Protection Board (MSPB) was directed to adjudicate employees' administrative appeals from adverse personnel actions and to insure adherence to stated merit systems principles.[30] An Office of Personnel Management (OPM) was empowered to supervise and exercise leadership in personnel management within the Executive Branch.[31] The Act also supplied a statutory foundation for labor-management relations in federal employment[32] and established FLRA as the body responsible for oversight of proceedings and other activities related thereto.[33]
 
 
 8
 Two of the Act's features are of central importance in the present controversy. Earlier, in the Back Pay Act of 1966,[34] Congress had "consolidate[d] and liberalize[d] existing law on the restoration of an employee to his position after an adverse action against him ha[d] been found by appellate authority to have been erroneous or unjustified, [thus] put[ting] the employee in the same position he would have been in had the unjustified or erroneous personnel action not taken place."[35] This legislation, however, too often failed to achieve that objective; for instance, it would not have benefited Richard Frontera, who gained his victory in arbitration and unfair labor practice proceedings, which the 1966 law did not cover. Moreover, while an employee might recover lost wages, he could not recoup any financial outlay made for the services of a lawyer in his winning effort. As the Senate Committee on Governmental Affairs was later to observe,
 
 
 9
 [the] Civil Service Commission ... [did] not have the authority to require agencies to pay the attorney fees of employees who prevail in their appeals. Employees whose agencies had taken unfounded action against them may spend a considerable amount of money defending themselves against these actions, [but] they cannot be reimbursed for attorney fees upon prevailing in their appeals to the Commission. Instead, they must file civil actions against the Government in order to obtain a review of their requests for reimbursement.[36]
 
 
 10
 The Civil Service Reform Act cured these deficiencies. The Back Pay Act was revised, and in current form it states:
 
 
 11
 (b)(1) An employee of an agency who, on the basis of a timely appeal or an administrative determination (including a decision relating to an unfair labor practice or a grievance) is found by appropriate authority under applicable law, rule, regulation, or collective bargaining agreement, to have been affected by an unjustified or unwarranted personnel action which has resulted in the withdrawal or reduction of all or part of the pay, allowances, or differentials of the employee--
 
 
 12
 (A) is entitled, on correction of the personnel action, to receive for the period for which the personnel action was in effect--
 
 
 13
 (i) an amount equal to all or any part of the pay, allowances, or differentials, as applicable which the employee normally would have earned or received during the period if the personnel action had not occurred, less any amounts earned by the employee through other employment during that period; and
 
 
 14
 (ii) reasonable attorney fees related to the personnel action which, with respect to any decision relating to an unfair labor practice or a grievance processed under a procedure negotiated in accordance with chapter 71 of this title [5 U.S.C. §§ 7101-7135 (1988) ] or under chapter 11 of title I of the Foreign Service Act of 1980 [22 U.S.C. §§ 4131-4140 (1988) ], shall be awarded in accordance with standards established under section 7701(g) of this title....[37]
 
 
 15
 Thus, backpay relief is now extended to employees successful in grievance and unfair labor practice proceedings, and reasonable attorneys' fees may be allowed whenever the remaining requirements of the Back Pay Act are satisfied.
 
 III. ELIGIBILITY FOR ATTORNEYS' FEES
 
 16
 As we revert to the cases at bar, we are confronted at the threshold by the question whether, in the circumstances presented, there properly can be any attorneys' fee award at all. The Back Pay Act, in referring to the recipient of the entitlements it confers, uses the word "employee,"[38] which is statutorily defined in terms of an "officer" or an "individual."[39] Since the requests for fees were submitted not by Richard Frontera, the fired and later reinstated cook, but rather by the union attorneys who participated in the grievance and unfair labor practice proceedings on his behalf, our dissenting colleague concludes that no allowance of fees is authorized. And the Bureau, adverting to Section 7701(g)(1)'s requirement that attorneys' fees sought must have been "incurred by an employee,"[40] maintains that since Frontera was not legally obligated to pay any sort of fee none was incurred, and that since Frontera was not a named party to either the arbitration or the ensuing proceedings he was not represented therein.
 
 A. The Relevant Statutory Provisions
 
 17
 We begin our consideration of these contentions with a close look at the two statutory provisions most pertinent. The union invokes the Back Pay Act which, in speaking of who may obtain attorneys' fees under its aegis, states that it is "[a]n employee of an agency who, on the basis of a timely appeal or an administrative determination (including a decision relating to an unfair labor practice or a grievance) is found by appropriate authority under applicable law, rule, regulation, or collective bargaining agreement, to have been affected by an unjustified or unwarranted personnel action which has resulted in the withdrawal or reduction of all or part of the pay, allowances, or differentials of the employee."[41] The entitlement of this "employee" arises "on correction of the personnel action,"[42] and it is "to receive" backpay "for the period for which the personnel action was in effect"[43] and "reasonable attorney fees related to the personnel action."[44] However, "with respect to any decision related to an unfair labor practice[45] or a grievance processed under a procedure negotiated in accordance with" applicable provisions of the Civil Service Reform Act,[46] the fees must "be awarded in accordance with standards established under section 7701(g)."[47]
 
 
 18
 Section 7701(g)[48] is directed primarily to grants of attorneys' fees by "the [Merit Systems Protection] Board, or an administrative law judge or other employee of the Board designated to hear a case" on appeal from a personnel action.[49] Either "may require payment by the agency involved of reasonable attorney fees incurred by an employee or applicant for employment"[50] upon satisfaction of two conditions. One is that "the employee or applicant is the prevailing party";[51] the other is that there be a "determin[ation] that payment by the agency is warranted in the interest of justice."[52] The phrase "interest of justice" "includ[es] any case in which a prohibited personnel practice was engaged in by the agency [and] any case in which the agency's action was clearly without merit."[53]
 
 
 19
 B. Unions as Fee Awardees Under the Back Pay Act
 
 1. The Precedents
 
 20
 To say, as the dissent does, that labor unions and their lawyers who assist employee personnel litigation are beyond the pale of the Back Pay Act's attorneys' fee prescription is first to defy the strong current of contemporary interpretation. The Supreme Court has twice confirmed the entitlement of nonprofit legal service organizations to fees under the Civil Rights Attorney's Fees Awards Act of 1976[54] though it speaks only of fees for "the prevailing party."[55] In this circuit, under statutes worded no more definitively or comprehensively, we have done the same with respect not only to a similar entity[56] but also to labor unions.[57] The Ninth Circuit has ruled explicitly that market-rate fees sought for a union's legal services fund are allowable under the Back Pay Act.[58] Both the Claims Court[59] and MSPB[60] have bottomed cost-based fees for union lawyers on that legislation, and FLRA has rested awards of both types thereon.[61] The Federal Circuit[62] and MSPB[63] held that unions may stand on Section 7701(g)(1)'s conditional authorization of awards of "reasonable attorney fees incurred by an employee or applicant for employment"[64] in their quests for remuneration incidental to representation of those individuals by union counsel.
 
 
 21
 Precedent, then, both judicial and administrative, points singularly in the direction of the availability of fees under the Back Pay Act to a labor union whose attorney has served the cause of an aggrieved employee in a grievance or unfair labor practice matter. We have not been referred to, nor have we found, any authority supporting the position taken in dissent; indeed, we have not encountered any other case in which the objection interposed by the dissent was even urged. We realize, of course, that some decisions favoring unions and union counsel have limited them to cost-based fees, a consideration we later address.[65] The important point for present purposes, however, is that they recognize that unions and their lawyers qualify for fees in some amount when the statutory elements stated are present.
 
 
 22
 There is abundant reason for this well-nigh universal understanding of the Back Pay Act. Whether or not a union may solicit attorneys' fees as a matter of independent entitlement, the victorious employee surely can,[66] and the representative character of the union and its lawyers in the litigation for which fees are sought must be taken fully into account. In the cases before us it cannot be doubted that they acted in that capacity throughout the grievance and unfair labor practice proceedings, a fact noted in the decision under review:
 
 
 23
 As the [administrative law] Judge found, the Union and its counsel filed the charge in this case and were at all relevant times prosecuting the case primarily, if not solely, on behalf of employee Frontera. Frontera was the sole person who suffered whatever harm was occasioned by the Agency's commission of an unfair labor practice. The remedy sought, and eventually obtained, through the administrative and judicial process was personal to Frontera.[67]
 
 
 24
 We see no reason why the union and union counsel could not continue equally with other counsel in their representative roles when it became appropriate to request attorneys' fees, and the Act has been administratively interpreted to permit precisely that to be done. Congress wrote into the Back Pay Act a direction to OPM to "prescribe regulations to carry out this section"[68] and OPM has issued a regulation allowing "[a]n employee or an employee's personal representative [to] request payment of reasonable attorney fees" under the act.[69] As OPM has explained, "[t]his provision does not address the question of who may receive payment for reasonable attorney fees. Rather, it provides that an employee's personal representative may request payment of reasonable attorney fees on the employee's behalf."[70] We believe the phrase "employee's personal representative" encompasses a union and its salaried attorney who have represented the employee.[71] Once requested and granted,, the fees can be allocated among the union, union counsel and the employee as their respective interests may appear--the process utilized in many contexts all of the time.
 
 
 25
 OPM's regulation is significant as an authoritative interpretation of the Back Pay Act. Congress has not specified any procedure to be followed in asking for fees, even when the employee is the applicant. As the Supreme Court has taught, " '[t]he power of an administrative agency to administer a congressionally created ... program necessarily requires the formulation of policy and the making of rules to fill any gap left, implicitly or explicitly, by Congress.' "[72] And when, as here, "the legislative delegation to an agency on a particular question is implicit rather than explicit[,] ... a court may not substitute its own construction of a statutory provision for a reasonable interpretation made by the administrator of an agency."[73]
 
 
 26
 This body of judicial and administrative precedent and the logic supporting it weighs heavily on the side of the union. The dissent, on its part, offers no more than a literal reading of the statutory language. The Supreme Court has "repeatedly warned against the dangers of an approach to statutory construction which confines itself to the bare words of a statute, ... for 'literalness may strangle meaning.' "[74] That, we think, the dissent has let be done here.
 
 
 27
 2. The Structure and History of the Act's Fee Provision
 
 
 28
 When we examine the structure of the Back Pay Act's fee section and its legislative history, it becomes even more evident that Congress did not intend to banish unions or their salaried lawyers from the realm of reasonable remuneration.
 
 
 29
 One of the major accomplishments of the Civil Service Reform Act was "statutory protection of the right of employees to organize, bargain collectively, and participate through labor organizations of their own choosing in decisions which affect them."[75] "Labor organizations ... in the civil service," Congress declared, "are in the public interest,"[76] and the Act allots various functions to them.[77] Of special interest to us are those defining the role of unions in grievances and unfair labor practice actions.
 
 
 30
 Agencies must accord exclusive recognition to unions selected by unit employees as their representatives.[78] The union chosen becomes "the exclusive representative of the employees in the unit it represents and is entitled to act for, and negotiate collective bargaining agreements covering, all employees in the unit."[79] With exceptions not applicable here, collective bargaining agreements must "provide procedures for the settlement of grievances, including questions of arbitrability,"[80] which are "the exclusive procedures for resolving grievances which fall within [their] coverage."[81] All grievance procedures thus negotiated must
 
 
 31
 include procedures that--
 
 
 32
 (A) assure an exclusive representative the right, in its own behalf or on behalf of any employee in the unit represented by the exclusive representative, to present and process grievances;
 
 
 33
 (B) assure such an employee the right to present a grievance on the employee's own behalf, and assure the exclusive representative the right to be present during the grievance proceeding; and
 
 
 34
 (C) provide that any grievance not satisfactorily settled under the negotiated grievance procedure shall be subject to binding arbitration which may be invoked by either the exclusive representative or the agency.[82]
 
 
 35
 The interplay of these provisions is well illustrated by the events transpiring in the cases at bar. The union, as exclusive representative of the employees in Frontera's bargaining unit, worked out with the Bureau of Prisons a collective bargaining agreement specifying procedures for processing and resolving grievances. The union later represented Frontera in his individual grievance proceeding, assigning two of its staff attorneys to the effort. When the parties deadlocked, the union called for arbitration and won an order favorable to Frontera. Thereafter, when the Bureau refused to obey the arbitral order, the union prosecuted an unfair labor practice action to a successful conclusion. Union counsel then sought compensation for the services they rendered in Frontera's behalf and invoked the Back Pay Act as the statutory foundation for an allowance thereof. Our dissenting colleague says that they must be rebuffed because the Act authorizes an attorneys' fee award only to an "employee," which the union and its lawyers definitely were not.
 
 
 36
 We would be greatly surprised to learn that they must be turned down if that were to become the case. Attorneys' fees are for the asking when employees are permissibly represented by privately-retained counsel and the statutory prerequisites are satisfied.[83] It is inconceivable that Congress, after imposing vital representational duties on unions, meant to deny fee awards when union lawyers served employees in like fashion. We need not, however, rest our decision upon this consideration alone, for specific features of the Act demonstrate beyond cavil that Congress did not intend that result.
 
 
 37
 An employee subjected to disciplinary action[84] may elect either to appeal to MSPB[85] or to utilize an available negotiated grievance procedure.[86] If the employee picks the latter, the union has the right to present and process the grievance on behalf of the employee[87] and, if the grievance is not satisfactorily settled by negotiation, the union or the agency may require submission of the dispute to binding arbitration.[88] While it is the employee's decision whether to use the negotiated grievance procedure at all,[89] the Supreme Court reminds us that "[t]he union and the agency possess the exclusive power to invoke the arbitral process...."[90] So it was in the instant case that the union was formally a party to the arbitration and Frontera, the real party in interest, was not.
 
 
 38
 When we examine the dissent's position against this statutory backdrop, we find it totally at war with the Back Pay Act. As we have seen, the Act expressly authorizes attorneys' fee awards for services furnished in grievance or unfair labor practice proceedings on behalf of employees adversely affected by unjustified or unwarranted personnel actions.[91] This was the upshot of congressional dissatisfaction with the 1966 version of the Act, which had left the expense of legal representation wholly upon employees, even when they were successful in their efforts.[92] Grievances usually wind up in arbitration, which unions must invoke and service;[93] many are resolved in unfair labor practice actions, which ordinarily are handled by union lawyers;[94] and employees cannot be represented by outside counsel when, as here, negotiated grievance and unfair labor practice procedures are utilized.[95] So, while the Act supplies the promise and the means of compensating union counsel, the dissent would snatch this opportunity away on the theory that union counsel cannot benefit from the Act.
 
 
 39
 After imposing upon unions and their lawyers the responsibility of employee representation in areas vital in the scheme of the Civil Service Reform Act, it would have been the height of irony for Congress to deny them the blessing of the Back Pay Act. We are unwilling to attribute such a purpose to Congress. Moreover, it is a cardinal rule of statutory construction that, to the extent possible, a legislative enactment is to be so read as to give operation to all of its parts,[96] and we are not prepared to disregard this salutary canon of interpretation.
 
 C. Satisfaction of Statutory Prerequisites
 
 40
 The Bureau's primary arguments are that unions and union lawyers cannot qualify under the Back Pay Act for an award of attorneys' fees for services rendered on behalf of an employee in a proceeding to which the employee was not a named party. The Bureau also insists that fees must be disallowed in this case for failure to meet one of the statutory stipulations. We find no merit in these contentions.
 
 
 41
 Nothing in the Back Pay Act requires an affected employee to be named as a party to an administrative proceeding charging wrongful personnel action, and for fairly obvious reasons. As we have said, resolution of employee grievances is accomplished largely through binding arbitration, which only the union and the agency can invoke.[97] A requirement of party status would likely produce less frequent resort to this time-tested mechanism for dispute resolution as well as unfairness to many lawyers who deserve to be paid. We agree with FLRA that
 
 
 42
 [t]o read the Back Pay Act to require an employee to file unfair labor practice charges in addition to, or as opposed to, the Union filing such charges as the representative of that employee would emphasize form over substance and render the Back Pay Act's provisions inapplicable in a large number of cases. We do not believe that such an interpretation is necessary or appropriate.[98]
 
 
 43
 The Bureau also points to the specification in the Back Pay Act that attorneys' fees are to be awarded, if at all, "in accordance with the standards established under section 7701(g),"[99] which empowers MSPB to allow "reasonable attorney fees incurred by an employee" in proceedings before it.[100] The Bureau contends that incurrence by the employee of a liability for fees is a requirement for an award under the Back Pay Act, and that it was not met because the union's lawyers represented Frontera free of charge. If the Bureau were correct, the astonishing result would be that Back Pay Act awards could be made only when employees could afford to pay for legal talent, which many employees are unable to do and no prevailing employee should have to do.[101] It was for those very reasons that the attorneys' fees provision was put into the Back Pay Act,[102] which is devoid of any reference to incurrence. This court has said, with reference to a similar statutory scheme, that free representation by union staff counsel does not preclude an award of attorneys' fees;[103] MSPB has held under Section 7701(g) that the fact that an employee had no contractual obligation to pay for legal services does not render inappropriate an attorneys' fee award to union-paid counsel;[104] and MSPB has further ruled that "attorney fees are 'incurred' within the ambit of § 7701(g)(1) where an attorney-client relationship exists and counsel has rendered legal services on behalf of the" employee.[105] Clearly, that relationship existed between Frontera and the two attorneys who labored on his behalf.[106]
 
 
 44
 More importantly, the requirement that Back Pay Act awards of attorneys' fees abide "the standards established under section 7701(g)" hardly imports into the Act every prerequisite to attorneys' fee allowances by MSPB.[107] OPM, in its special interpretive role,[108] has refused to declare that this language refers to Section 7701(g)(1)'s demand for "incurr[ence] by the employee"[109] and has instead adopted MSPB's stance on that score.[110] In the instant cases, FLRA remained faithful to that construction[111] and after careful review "believe[d] that this case presents the type of situation to which the authorization of attorney fee awards in MSPB and related proceedings is intended to apply."[112] It elucidated:
 
 
 45
 The sole issue in the unfair labor practice proceeding was the Agency's failure to comply with an arbitration award. The award specifically set forth the Arbitrator's ruling that Frontera was to be reinstated to a position in Ray Brook, New York, and that his assignment to Lewisburg, Pennsylvania did not constitute compliance with that award. Nonetheless, the Agency continued to refuse to properly reinstate Frontera throughout the course of substantial litigation, including the unfair labor practice proceeding and an unsuccessful appeal to the court of appeals. The employee's position was vindicated at each step of these proceedings.[113]
 
 
 46
 We agree. An agency bears a statutory duty to comply with "an arbitrator's final award,"[114] and surely that obligation extends to adverse-action arbitration awards. The interest of justice is served by an allowance of attorneys' fees whenever "the agency's action [is] clearly without merit,"[115] and without a doubt so it was here.
 
 IV. COMPUTATION OF THE FEES
 
 47
 We turn now to the question whether cost-based fees, to which in two instances FLRA confined its award, rather than the market-rate fees sought by the union were the appropriate response to the statutory call for reasonable attorney fees.
 
 
 48
 In the recent past, we have dealt occasionally with attorneys' fee claims by counsel for lay organizations which, like the union here, provide legal services and engage in other activities as well.[116] We have observed that
 
 
 49
 [r]easonableness, in terms of market value of the services rendered, is the sole limit on fee awards to organizationally-hired lawyers when the fees are to be paid to the lawyers alone. The organization, whatever its character, may recoup in full the expense it incurred in supplying the services to the client. Lawyers may, if they wish, voluntarily donate some or all of their fees to charity, or even to their employers, just as they may spend their other monies as they please.[117]
 
 
 50
 We also have held that market-rate fees may be paid to legal aid offices and other public interest organizations,[118] a position later vindicated by the Supreme Court.[119]
 
 
 51
 When, however, the fees sought are to be paid directly to an organization not only furnishing legal services but also conducting other activities, ethical considerations come to the fore. To grant a market-rate fee request is to open the door to fee-splitting, unauthorized law practice and organizational profiteering on the professional services of attorneys.[120] On this account, we have ruled that the measure of the organization's recovery is its financial outlay in the legal-service venture[121] unless there is some guarantee that the amount above the organization's actual cost will ultimately be spent in the provision of legal assistance--as, for example, by placement into a fund maintained exclusively for legal representation.[122] This assurance puts the organization's legal-service project on a par with legal aid societies and other private nonprofit law offices, and no ethical concern arises.[123]
 
 
 52
 If this were all, it would follow that market-rate attorneys' fees should be awarded to the union lawyers litigating here. Fees they recover are placed in the union's legal representation fund, an account totally separate from its general treasury. The fund is under the sole control of the union's general counsel, and is used solely for legal work.[124] This arrangement is of the very sort we have approved as a bulwark against unethical practice.[125]
 
 
 53
 However, both MSPB[126] and the Federal Circuit,[127] which alone exercises jurisdiction over MSPB,[128] have held that attorneys' fees paid to multipurpose organizations must be limited in amount to the organization's costs even though the excess would be deposited in a fund dedicated to legal assistance. In Wells v. Schweiker,[129] the union involved here prevailed in litigation before MSPB, which determined that payment of attorneys' fees to the union was warranted in the interest of justice. The union had set up its legal representation fund and asked for attorneys' fees computed at the market rate, but MSPB demurred:
 
 
 54
 Regardless of whether or not [the union] elects to expend its attorney fee awards solely for litigation-related purposes, the fact remains that the application of the market-value formula to the fee award here would allow [the union] to profit from the underlying activities of its attorneys in this matter. The extent of such a profit ... would be commensurate with the extent to which such an award would relieve [the union] of the burden of financing its litigation activities through its general revenue funds.... [W]ell-established ethical principles ... prohibit this result.[130]
 
 
 55
 On appeal, the Federal Circuit affirmed on the same basis,[131] and more lately has clung to the same rationale.[132] In deciding the cases at bar,[133] FLRA simply adhered to a precedent of its own,[134] which adopted the Federal Circuit's rule without further explanation.[135] In Curran v. Department of Treasury,[136] the Ninth Circuit disagreed with the course of reasoning in those tribunals,[137] and so do we.
 
 
 56
 In the first place, the notion that market-rate fee allowances to unions invariably result in above-cost benefits is dangerous. As the Ninth Circuit said in Curran,
 
 
 57
 [t]he Board's assumption that an above-cost fee award will always provide an indirect economic benefit to the non-legal activities of a lay organization is incorrect. Whether or not a particular lay organization will in fact receive an indirect economic benefit for its lay activities as a result of the "freeing up" of monies it otherwise would have spent for litigation turns on many factors. Although an organization may choose to divert its original contribution of general revenues for litigation to support an expansion of its lay activity, it may choose to instead maintain its original contribution and simply add this amount to any fees awarded to the litigation fund as a means of financing greater legal activity.[138]
 
 
 58
 Here, the record does not indicate what the union's policy or attitude would be if its legal representation fund were depleted. Furthermore, the effect of any fee award, large or small, is to confer a benefit; even if, as hypothesized, the union does gain indirectly from market-rate fees, so it also does from fees that are cost-limited, and the ethical considerations are precisely the same.[139] The size of the benefit varies, of course, but its character not one whit, and it defies logic to say that in the one instance the benefit is ethically permissible but in the other it is not. And no one would argue that, in order to avoid any benefit to the union, no attorneys' fee award in its favor should ever be made, for a clearer frustration of congressional intent could hardly be imagined.
 
 
 59
 We are mindful, of course, that MSPB's interpretations of its organic statute are entitled to "substantial deference,"[140] but that canon is inapplicable here. MSPB's stance on cost-based attorneys' fees for union counsel is bottomed squarely and totally on ethical grounds, not statutory text, and the same may be said about the Federal Circuit's decisions. As Curran put it,
 
 
 60
 this case does not involve statutory interpretation of the Back Pay Act. Rather, it involves a question of ethical considerations which would apply to fee awards without regard to the particular statute involved. The statutory standard of "reasonable attorney fees" in the Back Pay Act is identical to that in other statutes.. We see no reason to place different ethical obligations upon lawyers seeking fees under the Back Pay Act, ... from those seeking fees under [other named statutory schemes].... A congressional decision to concentrate administrative or judicial decision making in specialized agencies or courts should not result in the atomization of the law with respect to attorneys' obligations toward their clients.[141]
 
 
 61
 As the Supreme Court has noted, "[t]here are over 100 separate statutes providing for the award of attorney's fees; and although these provisions cover a wide variety of contexts and causes of action, the benchmark for the awards under nearly all of these statutes is that the attorney's fee be 'reasonable.' "[142] We are constrained to follow our earlier decisions equating "reasonable" with market-rate fees.[143] Like the Ninth Circuit in Curran, "[w]e see no reason to place different ethical obligations upon lawyers seeking fees under the Back Pay Act ... from those seeking fees under" other statutory regimes.[144]
 
 
 62
 MSPB recognizes fully that statutory specifications of "reasonable attorney fees" normally mean market-rate fees, and awards them to litigants other than unions.[145] But, from the very beginning, both MSPB and the Federal Circuit have read our NTEU decision[146] as an unqualified declaration that unions can never recoup more than their costs.[147] On the contrary, NTEU signaled the exorability of its holding when it predicted that market-rate fee awards to unions "perhaps [might] withstand criticism when the monies are directed into a fund for maintenance of a legal services program,"[148] and slightly more than a year later we made explicit in Jordan[149] that indeed they do.[150] We do no more than honor Jordan when today we express our wholehearted agreement with Curran "that a separate operating account for legal services provides sufficient protection against the unauthorized practice of law by a lay organization,"[151] and that "[w]hen fees are paid to a separate account used solely by lawyers for litigation purposes, there simply is no fee splitting with a lay entity and no encouragement of the unauthorized practice of law,"[152] and therefore "no ethical barrier to compensation at market rate."[153]
 
 
 63
 The order under review is accordingly reversed, and these cases are remanded to FLRA for further proceedings consistent with this opinion.
 
 
 64
 So ordered.
 
 SENTELLE, Circuit Judge, dissenting:
 
 65
 At the outset, I wish to make it clear that I express no opinion as to the majority's method of computing the attorneys' fees to be awarded the Union, because in my view, we cannot properly reach that question. The Union is entitled to no award of attorneys' fees at all. As the majority opinion makes plain, the Union's right, if it has one, must derive from the Back Pay Act, which permits an award of attorneys' fees to
 
 
 66
 [a]n employee of an agency who, on the basis of a timely appeal or an administrative determination (including a decision relating to an unfair labor practice or a grievance) is found ... to have been affected by an unjustified or unwarranted personnel action which has resulted in the withdrawal or reduction of all or part of the pay, allowances, or differentials of the employee....
 
 
 67
 5 U.S.C. § 5596(b)(1) (1988) (emphasis added). While it would seem to me self-evident that a union is not an "employee," let alone one who has suffered a "withdrawal or reduction of all or part of [its] pay, allowances, or differentials," further review of the statutory scheme of which § 5596(b) is a part removes any residual doubt.
 
 
 68
 First, 5 U.S.C. § 2105(a) defines the term "employee" for all of Title 5 of the United States Code as follows:
 
 
 69
 § 2105. Employee
 
 
 70
 (a) For the purpose of this title, "employee", except as otherwise provided by this section or when specifically modified, means an officer and an individual who is--
 
 
 71
 (1) appointed in the civil service by one of the following acting in an official capacity--
 
 
 72
 (A) the President;
 
 
 73
 (B) a Member or Members of Congress, or the Congress;
 
 
 74
 (C) a member of a uniformed service;
 
 
 75
 (D) an individual who is an employee under this section;
 
 
 76
 (E) the head of a Government controlled corporation; or
 
 
 77
 (F) an adjutant general designated by the Secretary concerned under section 709(c) of title 32, United States Code;
 
 
 78
 (2) engaged in the performance of a Federal function under authority of law or an Executive act; and
 
 
 79
 (3) subject to the supervision of an individual named by paragraph (1) of this subsection while engaged in the performance of the duties of his position.
 
 
 80
 I do not see how Congress could have made it any plainer that "employee" must be an individual, not a labor organization. As § 5596(b)(1) does not "otherwise provide[ ]" or "specifically modif[y]" the term "employee," the term must mean what Congress says it does, or in this case, it does not mean what Congress does not say. What Congress has not said is that "employee" includes a labor union.
 
 
 81
 Neither does the majority's discussion of 5 U.S.C. § 7701(g) add anything to the labor union's claim. That section, in language consistent with § 5596, empowers the Merit Systems Protection Board or its employees to "require payment by the agency involved of reasonable attorney fees incurred by an employee or applicant for employment." 5 U.S.C. § 7701(g)(1) (emphasis added). As this section is in Title 5, the same definition quoted above applies to the term "employee" in this section as in the previous one, and a union simply is not included.
 
 
 82
 Even if the language of the Back Pay Act were not clear on its face, Chapter 71 of Title 5 is telling on the question of whether Congress intended "employee" to include a labor union. Under that chapter's definitional section, the term " 'person' means an individual, labor organization, or agency," 5 U.S.C. § 7103(a)(1), while the term " 'employee' " means the singular, identifiable "individual." Id. at § 7103(a)(2). "In view of the repeated use of employee to mean an individual, it would be contrary to the plain and unequivocal language ... to say that the term 'employee' ... encompasses a labor organization.... It would also strain the ordinary meaning of the term 'employee.' " Reid v. Dep't of Commerce, 793 F.2d 277, 282 (Fed.Cir.1986). The majority, however, runs against this persuasive advice.
 
 
 83
 The majority labors powerfully to stretch the plainly worded statutory grant of attorneys' fees to employees to include a grant to unions. The effort is an impressive one, but the result is not. In support of its distortion of the statute, the majority cites an Office of Personnel Management regulation permitting " '[a]n employee or an employee's personal representative [to] request payment of reasonable attorney fees' " under the relevant statute. Maj. op. at 929 (quoting 5 C.F.R. 550.807 (1991)). The majority goes on to argue the now undisputed point of administrative law that " ' "[t]he power of an administrative agency to administer a congressionally created ... program necessarily requires the formulation of policy and the making of rules to fill any gap left, implicitly or explicitly, by Congress." ' " Id. at 930 (quoting Chevron U.S.A. Inc. v. Natural Resources Defense Council, 467 U.S. 837, 843, 104 S.Ct. 2778, 2782, 81 L.Ed.2d 694 (1984)) (other citations omitted)[1]. There are at least two glaring difficulties with the majority's reliance on this reasoning. First, Congress has left no gap here to fill. Under the familiar two-step analysis mandated by Chevron, "if the intent of Congress is clear, that is the end of the matter; for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress." Chevron, 467 U.S. at 842-43, 104 S.Ct. at 2782 (footnote omitted). It is only if "Congress has not directly addressed the precise question at issue," that we proceed to the second step of deferring to the agency's answer unless it is not "based on a permissible construction of the statute." Id. (footnote omitted). I do not see how Congress could have spoken much more plainly to the precise question of the definition of "employee" than to have explicitly defined it in terms as set forth in § 2105.
 
 
 84
 The second difficulty with the majority's reliance on the OPM regulation--a regulation totally consistent with the statutory definition--is that that regulation in no sense defines the term "employee" so as to include labor unions. The regulation, as quoted by the majority, permits application by an employee or "an employee's personal representative." Maj. op. at 929 (footnote omitted). Somehow, the majority comes to the conclusion that "the phrase 'employee's personal representative' encompasses a union and its salaried attorney who have represented the employee." Id. (footnote omitted). In all the usages I have ever seen of the term "personal representative" in the law, it has been a term of art meaning "[e]xecutors and administrators of person deceased." Black's Law Dictionary, 5th ed., 1170 (1979). Granted, one authority has expanded that definition to note that the term "may have a wider meaning, according to the intention of the person using it," but defines this wider meaning to "include heirs, next of kin, descendants, assignees, grantees, receivers, and trustees in insolvency." Id. The same authority goes on to note that the term "[i]ncludes executor, administrator, successor, personal representative, special administrator, and persons who perform substantially the same function under the law governing their status. 'General personal representative' excludes special administrator." Id. (relying on Uniform Probate Code § 1-201(30)). Nowhere does this or any other authority define "personal representative" to include a collective bargaining representative such as the Union in the instant case. Federal Rule of Appellate Procedure 43(a) provides that "[i]f a party dies after a notice of appeal is filed ... the personal representative of the deceased party may be substituted as a party ..." (emphasis added). As the term is used in the rule it has been interpreted as "refer[ing] to an individual recognized by state law, such as an executor." Bennett v. Tucker, 827 F.2d 63, 68 (7th Cir.1987); see also Complaint of Cosmopolitan Ship. Co., S.A., 453 F.Supp. 265, 266 (S.D.N.Y.1978) (deciding within the context of the Jones Act "that the term personal representative requires some designation by a court that the individual seeking to prosecute the wrongful death action is an administrator of the decedent's estate." (emphasis omitted)).
 
 
 85
 Nowhere in labor law, so far as I have ever seen, is the term "personal representative" ever used. It is a term of administration of estates of the deceased, occasionally of the incompetent or insolvent, but never is it a term referring to a collective bargaining agent employing an attorney on behalf of one of its members.
 
 
 86
 In further support of the specificity of the term "personal representative," the index to the United States Code Annotated does include references to the term "personal representative." The first of the four references in that index is the only specific one and reads as follows:
 
 
 87
 Bankruptcy, railroad reorganization, deceased person, claim against debtor or estate for death, payment as administrative expense, priority, 11 § 1171.
 
 
 88
 U.S.C.A. General Index P to R, 126 (1990). The other three references are all cross-references to other headings. Conspicuously those other headings are:
 
 
 89
 Executors and Administrators, generally, this index
 
 Fiduciaries, generally, this index
 
 90
 Guardian and Ward, generally, this index.
 
 
 91
 Id.
 
 
 92
 Thus, not only is there no room for a Chevron analysis on the meaning of "employee" in the present context, the majority's attempt to use the OPM regulation as such an analysis does not help the Union's claim, even if it is applied.
 
 
 93
 In this case the Union, not Mr. Frontera, selected and paid the attorneys. The unfair labor practice proceeding that forms the root of this appeal was initiated, not by Frontera, but by the Union itself. The charge filed with the FLRA General Counsel was in the name of the Union, not the employee Frontera. Without benefit of an express or implied attorney-client agreement, see Peterson v. Kennedy, 771 F.2d 1244, 1258 (9th Cir.1985), cert. denied, 475 U.S. 1122, 106 S.Ct. 1642, 90 L.Ed.2d 187 (1986), or a statutory substitute, see, e.g., 5 U.S.C. § 7121(b)(3)(C) (union shall be "exclusive representative[ ]" in labor arbitration), a union cannot independently seek a fee award. See, e.g., McAlear v. Merit Systems Protection Board, 806 F.2d 1016, 1017 (Fed.Cir.1986).[2]
 
 
 94
 Thus, I will end as I began. So far as the method of computing attorneys' fees is involved, I express no opinion, as none should be awarded at all.
 
 
 
 [1]
 Pub.L. No. 90-83, 81 Stat. 195, 203 (1967) (codified as amended at 5 U.S.C. § 5596 (1988 & West Supp.1991)) [hereinafter cited as codified]
 
 
 [2]
 Id. § 5596(b)(1)(A)(ii), quoted in text infra at note 37
 
 
 [3]
 United States Dep't of Justice, 22 F.L.R.A. (No. 95) 939, 941 (1985) (administrative law judge's decision) [hereinafter ALJ Decision I ]
 
 
 [4]
 Id. at 941
 
 
 [5]
 Id. (quoting arbitrator)
 
 
 [6]
 The Bureau said that "in cases involving serious misconduct and mistreatment of inmates, it was Bureau policy 'to reassign the employee to another facility in order to give him an opportunity for a fresh start among new co-workers and to lessen the possibility for reprisal against him by the inmate population.' " Id. at 943 (citation omitted)
 
 
 [7]
 Id
 
 
 [8]
 Id. at 943-945. The arbitrator explained that " '[t]he use of the term "regular job" in my award means regular job at the Federal Correctional Institution at Ray Brook, New York. Normally when arbitrators say "regular job" they mean the same job at the same location held by the grievant before his discharge.' " United States Dep't of Justice, 22 F.L.R.A. (No. 95) 928, 929 (1986) (decision and order) [hereinafter FLRA Decision I ] (quoting arbitrator)
 
 
 [9]
 FLRA Decision I, supra note 8, 22 F.L.R.A. (No. 95) at 929. Instead, the Bureau filed exceptions to the award as clarified, which the Federal Labor Relations Authority (FLRA) rejected for jurisdictional reasons. AFGE, Local 3882, 15 F.L.R.A. 204 (1984). The Bureau took no further action and the arbitral award thus became binding. See 5 U.S.C. §§ 7121(b)(3)(C), 7122(b) (1988 & West Supp.1991)
 
 
 [10]
 The General Counsel's Office investigates charges of unfair labor practices by federal agencies and, when warranted, files and prosecutes complaints. 5 U.S.C. §§ 7105(e)(1)(A), (B), 7118(a)(1) (1988). FLRA conducts hearings on such complaints and resolves them. Id. § 7105(a)(2)(G). See NTEU v. FLRA, 253 U.S.App.D.C. 12, 15, 791 F.2d 183, 186 (1986)
 
 
 [11]
 FLRA Decision I, supra note 8, 22 F.L.R.A. (No. 95) at 928. The statutory provisions allegedly infringed included 5 U.S.C. § 7116(a)(1) & (8) (1988), stating:
 (a) For the purpose of this chapter, it shall be an unfair labor practice for an agency--
 (1) to interfere with, restrain, or coerce any employee in the exercise by the employee of any right under this chapter; [or] ...
 (8) to otherwise fail or refuse to comply with any provision of this chapter.
 By dishonoring the arbitral award, the union said, the Bureau, in violation of subsection (a)(1), "interfer[ed] with" Frontera's right to be reinstated at Ray Brook and, in violation of subsection (a)(8), "refuse[d] to comply with" statutory provisions making arbitral awards binding on the parties. See Department of Air Force v. FLRA, 775 F.2d 727, 732 (6th Cir.1985) (refusal to comply with order enforcing arbitral award was unfair labor practice); United States Marshals Serv. v. FLRA, 778 F.2d 1432, 1436 (9th Cir.1985) (same).
 
 
 [12]
 FLRA may delegate to an administrative law judge the power to determine whether a person is engaging or has engaged in an unfair labor practice, 5 U.S.C. § 7105(e)(2) (1988), and FLRA has done so. 5 C.F.R. § 2423.19 (1991)
 
 
 [13]
 ALJ Decision I, supra note 3, 22 F.L.R.A. (No. 95) at 953-954; FLRA Decision I, supra note 8, 22 F.L.R.A. (No. 95) at 933
 
 
 [14]
 FLRA Decision I, supra note 8, 22 F.L.R.A. (No. 95) at 933
 
 
 [15]
 The Bureau petitioned in the Second Circuit for review, and FLRA cross-petitioned for enforcement of its order. The court denied the Bureau's petition and directed enforcement. United States Dep't of Justice v. FLRA, Case Nos. 86-4133, 87-4013 (2d Cir. April 22, 1987) (unreported order) [reprinted in part in United States Dep't of Justice, 32 F.L.R.A. (No. 3) 31, 36 (1987) ] (administrative law judge's decision on motions for attorneys' fees) [hereinafter ALJ Decision II ]
 
 
 [16]
 ALJ Decision II, supra note 15, 32 F.L.R.A. (No. 3) at 40
 
 
 [17]
 On July 5, 1985, Snyder's position was terminated by a reduction-in-force but, pursuant to a fee arrangement, she continued representation until August 18, 1986. See id. at 41-42
 
 
 [18]
 Id. at 37
 
 
 [19]
 Id. at 38
 
 
 [20]
 Id. at 42-43
 
 
 [21]
 United States Dep't of Justice, 32 F.L.R.A. (No. 3) 20 (1988) (FLRA decision and order) ( [hereinafter FLRA Decision II ]
 
 
 [22]
 Id. at 24
 
 
 [23]
 Id. at 30
 
 
 [24]
 Judicial review here is appropriate under 5 U.S.C. § 7123(a) (1988)
 
 
 [25]
 Reorg. Plan No. 2 of 1978, 5 C.F.R. pts. 1-699, 1200-2600 (1991), reprinted in 5 U.S.C. app. at 1369 (1988), and in 92 Stat. 3783 (1978) [hereinafter Reorg. Plan]
 
 
 [26]
 Pub.L. No. 95-454, 92 Stat. 1111 (1978) (codified in scattered sections of 5 U.S.C.) [hereinafter cited as codified]
 
 
 [27]
 124 Cong.Rec. 27547 (1978) (statement of Sen. Sasser)
 
 
 [28]
 United States v. Fausto, 484 U.S. 439, 443, 108 S.Ct. 668, 671, 98 L.Ed.2d 830, 837 (1988) (quoting Lindahl v. OPM, 470 U.S. 768, 773, 105 S.Ct. 1620, 1624, 84 L.Ed.2d 674, 681 (1985))
 
 
 [29]
 Id. (quoting Lindahl v. OPM, supra note 28, 470 U.S. at 774, 105 S.Ct. at 1624, 84 L.Ed.2d at 681)
 
 
 [30]
 Reorg. Plan, supra note 25, §§ 201-202, 204, 5 C.F.R. §§ 1200.1-.201.183 (1991); 5 U.S.C. §§ 1201-1219 (West Supp.1991)
 
 
 [31]
 Reorg. Plan, supra note 25, §§ 101-105, 5 C.F.R. §§ 1.1-1001.735 (1990); 5 U.S.C. §§ 1101-1105 (West Supp.1991)
 
 
 [32]
 5 U.S.C. §§ 7101-7135 (1988 & West Supp.1991)
 
 
 [33]
 Reorg. Plan, supra note 25, §§ 301-305, 5 C.F.R. §§ 2411.1, 2472.12 (1991); 5 U.S.C. §§ 7104-7105 (1988 & West Supp.1991)
 
 
 [34]
 Pub.L. No. 89-380, 80 Stat. 94 (1966)
 
 
 [35]
 S.Rep. No. 1062, 89th Cong. 2d Sess. 1 (1966), reprinted in 1966 U.S.Code Cong. & Admin.News 2097, 2097
 
 
 [36]
 S.Rep. No. 95-969, 95th Cong., 2d Sess. 60-61 (1978), reprinted in 1978 U.S.Code Cong. & Admin.News 2723, 2782-2783
 
 
 [37]
 5 U.S.C. § 5596(b)(1)(A)(ii) (West Supp.1991). Section 7701(g), referred to therein, provides:
 [T]he [Merit Systems Protection] Board, or an administrative law judge or other employee of the Board designated to hear a case, may require payment by the agency involved of reasonable attorney fees incurred by an employee or applicant for employment if the employee or applicant is the prevailing party and the Board, administrative law judge, or other employee (as the case may be) determines that payment by the agency is warranted in the interest of justice, including any case in which a prohibited personnel practice was engaged in by the agency or any case in which the agency's action was clearly without merit.
 Id. § 7701(g)(1).
 
 
 [38]
 See text supra at note 37
 
 
 [39]
 For purposes of the Civil Service Act, which embodies the Back Pay Act,
 "employee," except as otherwise provided by this section or when specifically modified, means an officer and an individual who is--
 (1) appointed in the civil service by one of the following acting in an official capacity--
 (A) the President;
 (B) a Member or Members of Congress, or the Congress;
 (C) a member of a uniformed service;
 (D) an individual who is an employee under this section;
 (E) the head of a Government controlled corporation; or
 (F) an adjutant general designated by the Secretary concerned under section 709(c) of title 32;
 (2) engaged in the performance of a Federal function under authority of law or an Executive act; and
 (3) subject to the supervision of an individual named by paragraph (1) of this subsection while engaged in the performance of the duties of his position.
 5 U.S.C. § 2105(a) (1988 & West Supp.1991). See also id. § 7103(a)(2).
 
 
 [40]
 See note 37 supra
 
 
 [41]
 5 U.S.C. § 5596(b)(1) (1988 & West Supp.1991), quoted in text supra at note 37
 
 
 [42]
 Id. § 5596(b)(1)(A)
 
 
 [43]
 Id. § 5596(b)(1)(A), (b)(1)(A)(i)
 
 
 [44]
 Id. § 5596(b)(1)(A)(ii)
 
 
 [45]
 See id. § 7116 (1988)
 
 
 [46]
 See id. § 7121(a)-(b)
 
 
 [47]
 Id. § 5596(b)(1)(A)(ii) (1988 & West Supp.1991)
 
 
 [48]
 Id. § 7701(g) (1988)
 
 
 [49]
 Id. § 7701(g)(1). This is the subsection bearing some relevance to the instant case. Another, § 7701(g)(2), applies when the administrative decision rests upon a finding of discrimination proscribed by § 2302(b)(1), which is not the situation here
 
 
 [50]
 Id. § 7701(g)(1)
 
 
 [51]
 Id
 
 
 [52]
 Id. See Sterner v. Department of Army, 711 F.2d 1563, 1565-1566 (Fed.Cir.1983)
 
 
 [53]
 5 U.S.C. § 7701(g)(1) (1988)
 
 
 [54]
 "In any action or proceeding to enforce a provision of sections 1981, 1982, 1983, 1985, and 1986 of this title, ... the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs." Pub.L. 94-559, 90 Stat. 2641 (1976) (codified as amended at 42 U.S.C. § 1988 (1988))
 
 
 [55]
 Missouri v. Jenkins, 491 U.S. 274, 278-284, 109 S.Ct. 2463, 2469-2472, 105 L.Ed.2d 229, 240-244 (1989) (NAACP Legal Defense and Educational Fund, Inc.); Blum v. Stenson, 465 U.S. 886, 104 S.Ct. 1541, 79 L.Ed.2d 891 (1984) (Legal Aid Society of New York)
 
 
 [56]
 Jordan v. United States Dep't of Justice, 223 U.S.App.D.C. 325, 691 F.2d 514 (1982) (award to Institute for Public Representation at Georgetown University Law Center under Freedom of Information Act, 5 U.S.C. § 552(a)(4)(E) (1988 & West Supp.1991), providing for assessment of "reasonable attorney fees ... reasonably incurred in any case under this section in which the complainant has substantially prevailed")
 
 
 [57]
 NTEU v. United States Dep't of Treasury, 211 U.S.App.D.C. 259, 656 F.2d 848 (1981) (award under Privacy Act, 5 U.S.C. § 552a(g)(3)(B) (1988 & West Supp.1991), practically identical in its fee provision to Freedom of Information Act, see note 56 supra ); Anderson v. United States Dep't of Treasury, 208 U.S.App.D.C. 261, 648 F.2d 1 (1979) (same). See also Munsey v. Federal Mine Safety & Health Review Comm'n, 226 U.S.App.D.C. 240, 701 F.2d 976 (award under Federal Coal Mine Health and Safety Act, 30 U.S.C. § 820(b)(2) (1976)), cert. denied, 464 U.S. 851, 104 S.Ct. 163, 78 L.Ed.2d 149 (1983)
 
 
 [58]
 Curran v. Department of Treasury, 805 F.2d 1406 (9th Cir.1986)
 
 
 [59]
 Johnson v. United States, 16 Cl.Ct. 321, aff'd, 889 F.2d 1100 (Fed.Cir.1989)
 
 
 [60]
 Wells v. Schweiker, 12 MSPB 329, 14 M.S.P.R. 175 (1982)
 
 
 [61]
 Department of Defense Dependents Schools, 30 F.L.R.A. (No. 134) 1206 (1988) (cost-based fees), modified, 32 F.L.R.A. 757 (1988) (market-rate fees); U.S. Customs Serv., 21 F.L.R.A. (No. 109) 932 (1986) (cost-based fees); IRS, 21 F.L.R.A. (No. 107) 918 (1986) (same); Health Care Fin. Admin., 21 F.L.R.A. (No. 106) 910 (1986) (same); Naval Air Dev. Center, 21 F.L.R.A. (No. 25) 132 (1986) (same)
 
 
 [62]
 Goodrich v. Department of Navy, 733 F.2d 1578 (Fed.Cir.1984), cert. denied, 469 U.S. 1189, 105 S.Ct. 958, 83 L.Ed.2d 965 (1985). See also Devine v. NTEU, 805 F.2d 384, 385 (Fed.Cir.1986), cert. denied, 484 U.S. 815, 108 S.Ct. 67, 98 L.Ed.2d 31 (1987)
 
 
 [63]
 Kean v. Department of Army, 41 M.S.P.R. 618, 620 (1989); Franks v. Department of Treasury, 26 M.S.P.R. 351, 354 (1985); Powell v. Department of Treasury, 8 MSPB 21, 8 M.S.P.R. 322, 330-332 (1981), following remand, 26 M.S.P.R. 343 (1985); O'Donnell v. Department of Interior, 2 MSPB 604, 2 M.S.P.R. 445, 452-454 (1980)
 
 
 [64]
 See note 37 supra
 
 
 [65]
 See Part IV infra
 
 
 [66]
 An allowance of attorneys' fees is not foreclosed merely because the employee is not legally obliged to pay for the services supplied. See notes 103-105 infra and accompanying text
 
 
 [67]
 FLRA Decision II, supra note 21, 32 F.L.R.A. (No. 3) at 25
 
 
 [68]
 5 U.S.C. § 5596(c) (1988 & West Supp.1991)
 
 
 [69]
 5 C.F.R. § 550.807 (1991)
 
 
 [70]
 46 Fed.Reg. 58,271, 58,274 (1981) (emphasis in original)
 
 
 [71]
 The dissent argues that the term "personal representative" summons no more than its usual connotation as a reference only to one who acts for the estate of a deceased person. All indicia of the intended meaning, however, are the contrary. OPM, as it said, was referring to a "personal representative" requesting payment "on the employee's behalf," not for the benefit of someone who succeeded to his interest after death. Besides, the union statutorily was the "exclusive representative" of Frontera and all others in his unit, 5 U.S.C. § 7114 (1988), with substantial representational responsibilities to individual employees in disciplinary and grievance matters. Id. §§ 7114(a)-(b), 7121(b). See Part III(B)(2) infra. OPM's use of the word "personal" rather than "exclusive" before "representative" may easily be explained by the fact that an employee has the right to representation by a lawyer or layman of his own choosing when statutory, as distinguished from negotiated, grievance procedures or appeals are utilized. Id. § 7114(a)(5)
 
 
 [72]
 Chevron U.S.A. Inc. v. NRDC, 467 U.S. 837, 843, 104 S.Ct. 2778, 2782, 81 L.Ed.2d 694, 703 (1984) (quoting Morton v. Ruiz, 415 U.S. 199, 231, 94 S.Ct. 1055, 1072, 39 L.Ed.2d 270, 292 (1974))
 
 
 [73]
 Id. 467 U.S. at 844, 104 S.Ct. at 2782, 81 L.Ed.2d at 703
 
 
 [74]
 Lynch v. Overholser, 369 U.S. 705, 710, 82 S.Ct. 1063, 1067, 8 L.Ed.2d 211, 215 (1962) (quoting Utah Junk Co. v. Porter, 328 U.S. 39, 44, 66 S.Ct. 889, 892, 90 L.Ed. 1071, 1074 (1946))
 
 
 [75]
 5 U.S.C. § 7101(a)(1) (1988)
 
 
 [76]
 Id. § 7101(a)(2)
 
 
 [77]
 E.g., id. §§ 7111, 7113-7114, 7117
 
 
 [78]
 Id. § 7111(a) (1988)
 
 
 [79]
 Id. § 7114(a)(1)
 
 
 [80]
 Id. § 7121(a)(1)
 
 
 [81]
 Id
 
 
 [82]
 Id. § 7121(b)(3)
 
 
 [83]
 See Zeizel v. Pierce, 251 U.S.App.D.C. 306, 308, 784 F.2d 405, 408 (1986); Wilson v. Turnage, 243 U.S.App.D.C. 10, 16, 750 F.2d 1086, 1092 (1984), cert. denied, 479 U.S. 988, 107 S.Ct. 580, 93 L.Ed.2d 583 (1986); Crowley v. Shultz, 227 U.S.App.D.C. 140, 143, 704 F.2d 1269, 1273 (1983); Hoska v. U.S. Dep't of Army, 224 U.S.App.D.C. 150, 153, 694 F.2d 270, 273 (1982)
 
 
 [84]
 See 5 U.S.C. §§ 4303, 7512 (1988 & West Supp.1991)
 
 
 [85]
 Id. §§ 4303(e), 7513(d), 7701
 
 
 [86]
 Id. § 7121(a), (b); Cornelius v. Nutt, 472 U.S. 648, 652, 105 S.Ct. 2882, 2885, 86 L.Ed.2d 515, 521 (1985)
 
 
 [87]
 5 U.S.C. § 7121(b)(3)(A) (1988), quoted in text supra at note 82. The employee likewise has "the right to present a grievance on the employee's own behalf," id. § 7121(b)(3)(B), but not through the efforts of someone other than a union lawyer or representative. The employee has a general right to "represent[ation] by an attorney or other representative, other than the exclusive representative, of the employee's own choosing in any grievance or appeal action," but not "in the case of grievance or appeal procedures negotiated under this chapter." Id. § 7114(a)(5)
 
 
 [88]
 Id. § 7121(b)(3)(A)
 
 
 [89]
 Cornelius v. Nutt, supra note 86, 472 U.S. at 660 n. 15, 105 S.Ct. at 2889 n. 15, 86 L.Ed.2d at 526 n. 15
 
 
 [90]
 Cornelius v. Nutt, supra note 86, 472 U.S. at 660, 105 S.Ct. at 2889, 86 L.Ed.2d at 526
 
 
 [91]
 See text supra at note 37
 
 
 [92]
 See text supra at note 36
 
 
 [93]
 See text supra at note 90
 
 
 [94]
 See Civil Service Reform Act of 1978: Transcript of House-Senate Conference Markup Session (Sept. 18, 1978) at 31 (statement of Sen. Ribicoff)
 
 
 [95]
 See note 87 supra
 
 
 [96]
 E.g., Reiter v. Sonotone Corp., 442 U.S. 330, 339, 99 S.Ct. 2326, 2331, 60 L.Ed.2d 931, 937 (1979); Colautti v. Franklin, 439 U.S. 379, 392, 99 S.Ct. 675, 684, 58 L.Ed.2d 596, 607 (1979)
 
 
 [97]
 See text supra at notes 88-90
 
 
 [98]
 FLRA Decision II, supra note 21, 32 F.L.R.A. (No. 3) at 26
 
 
 [99]
 See text supra at note 37
 
 
 [100]
 5 U.S.C. § 7701(g)(1) (1988), quoted supra note 37
 
 
 [101]
 See text supra at note 36
 
 
 [102]
 See text supra at note 36
 
 
 [103]
 Munsey v. Federal Mine Safety & Health Review Comm'n, supra note 57, 226 U.S.App.D.C. at 241, 701 F.2d at 977. See also Rodriguez v. Taylor, 569 F.2d 1231, 1245 (3d Cir.1977) ("awards of attorneys' fees where otherwise authorized are not obviated by the fact that individual plaintiffs are not obligated to compensate their counsel"), cert. denied, 436 U.S. 913, 98 S.Ct. 2254, 56 L.Ed.2d 414 (1978)
 
 
 [104]
 O'Donnell v. Department of Interior, supra note 63, 2 M.S.P.R. at 452-454
 
 
 [105]
 Id. at 454. See also Wells v. Harris, 2 MSPB 572, 2 M.S.P.R. 409, 414 n. 7 (1980)
 
 
 [106]
 See FLRA Decision II, supra note 21, 32 F.L.R.A. (No. 3) at 22, 25, 26
 
 
 [107]
 Were this to be done § 7701(g)(1)'s "prevailing party" requirement would collide with the Back Pay Act's more precise precondition--that the proceeding culminate in correction of the challenged personnel action--and would thus expand eligibility for fee awards to the larger class of litigants deemed prevailing parties under § 7701(g)(1). Consequences of this sort are to be avoided in statutory interpretation. Mountain States Tel. & Tel. Co. v. Pueblo of Santa Ana, 472 U.S. 237, 249, 105 S.Ct. 2587, 2594, 86 L.Ed.2d 168, 179 (1985); Colautti v. Franklin, supra note 96, 439 U.S. at 392, 99 S.Ct. at 684, 58 L.Ed.2d at 607; Norfolk & W. Ry. v. United States, 247 U.S.App.D.C. 256, 262, 768 F.2d 373, 379 (1985); In Re Surface Mining Regulation Litig., 201 U.S.App.D.C. 360, 367, 627 F.2d 1346, 1362 (1980)
 
 
 [108]
 See 5 U.S.C. § 5596(c) (1988 & West Supp.1991), quoted in text supra at note 68
 
 
 [109]
 46 Fed.Reg. 58,271, 58,274 (1981)
 
 
 [110]
 Id
 
 
 [111]
 FLRA Decision II, supra note 21, 32 F.L.R.A. (No. 3) at 26
 
 
 [112]
 Id. at 27
 
 
 [113]
 Id
 
 
 [114]
 5 U.S.C. § 7122(b) (1988 & West Supp.1991). See also cases cited supra note 11
 
 
 [115]
 Id. § 7701(g)(1) (1988)
 
 
 [116]
 For the moment, we distinguish such organizations from those private nonprofit entities whose sole activity is the provision of legal services--legal aid societies, for example. See Blum v. Stenson, supra note 55, 465 U.S. at 892-896, 104 S.Ct. at 1545-1547, 79 L.Ed.2d at 897-900. Since all revenues received by organizations of the latter type are devoted to legal services, the problem encountered in the case before us does not arise
 
 
 [117]
 NTEU v. United States Dep't of Treasury, supra note 57, 211 U.S.App.D.C. at 263-264, 656 F.2d at 853-854 (footnotes omitted). See also id. at 261, 656 F.2d at 850; Jordan v. United States Dep't of Justice, supra note 56, 223 U.S.App.D.C. at 327 n. 14, 691 F.2d at 516 n. 14; NTEU v. Nixon, 172 U.S.App.D.C. 217, 222-223, 521 F.2d 317, 322-323 (1975); Copeland v. Marshall, 205 U.S.App.D.C. 390, 406-410, 641 F.2d 880, 906-908 (1980) (en banc ); Wilderness Soc'y v. Morton, 161 U.S.App.D.C. 446, 456-457, 495 F.2d 1026, 1037-1038 (1974), rev'd on other grounds sub nom., Alyeska Pipeline Serv. Co. v. Wilderness Soc'y, 421 U.S. 240, 95 S.Ct. 1612, 44 L.Ed.2d 141 (1975)
 
 
 [118]
 NTEU v. United States Dep't of Treasury, supra note 57, 211 U.S.App.D.C. at 264-265, 656 F.2d at 853-854
 
 
 [119]
 Blum v. Stenson, supra note 55, 465 U.S. at 892-896, 104 S.Ct. at 1545-1547, 79 L.Ed.2d at 898-900
 
 
 [120]
 NTEU v. United States Dep't of Treasury, supra note 57, 211 U.S.App.D.C. at 262-263, 656 F.2d at 851-852
 
 
 [121]
 Munsey v. Federal Mine Safety & Health Review Comm'n, supra note 57, 226 U.S.App.D.C. at 241, 701 F.2d at 977; Anderson v. United States Dep't of Treasury, supra note 57, 208 U.S.App.D.C. at 263, 648 F.2d at 3
 
 
 [122]
 Jordan v. United States Dep't of Justice, supra note 56, 223 U.S.App.D.C. at 327 n. 14, 691 F.2d at 516 n. 14; NTEU v. United States Dep't of Treasury, supra note 57, 211 U.S.App.D.C. at 265 & n. 61, 656 F.2d at 855 & n. 61
 
 
 [123]
 See Jordan v. United States Dep't of Justice, supra note 56, 223 U.S.App.D.C. at 327 n. 14, 691 F.2d at 516 n. 14; NTEU v. United States Dep't of Treasury, supra note 57, 211 U.S.App.D.C. at 264-266, 656 F.2d at 853-855; Copeland v. Marshall, supra note 117, 205 U.S.App.D.C. at 410, 641 F.2d at 900; NTEU v. Nixon, supra note 117, 172 U.S.App.D.C. at 222-223, 521 F.2d at 322-323; Wilderness Soc'y v. Morton, supra note 117, 161 U.S.App.D.C. at 457, 495 F.2d at 1037
 
 
 [124]
 Affidavit of Martin R. Cohen, J.App. 160. See also Goodrich v. Department of Navy, supra note 62, 733 F.2d at 1579
 
 
 [125]
 See cases cited supra note 122
 
 
 [126]
 See Kean v. Department of Army, supra note 63, 41 M.S.P.R. at 620-622; Fairall v. Veterans Admin., 33 M.S.P.R. 33, 39 (1987), aff'd, 844 F.2d 775 (Fed.Cir.1987); Franks v. Department of Treasury, supra note 63, 26 M.S.P.R. at 354-355; Wells v. Schweiker, supra note 60, 14 M.S.P.R. at 180; Powell v. Department of Treasury, supra note 63, 8 M.S.P.R. at 330-332
 
 
 [127]
 E.g., Devine v. NTEU, supra note 62, 805 F.2d at 386-389; Goodrich v. Department of Navy, supra note 62, 733 F.2d at 1579-1581
 
 
 [128]
 5 U.S.C. § 7703 (1988 & West Supp.1991)
 
 
 [129]
 Supra note 60
 
 
 [130]
 14 M.S.P.R. at 180
 
 
 [131]
 Goodrich v. Department of Navy, supra note 62, 733 F.2d at 1579-1581, the court stating:
 At least to the extent the union uses its general funds to pay for the legal services it furnishes to its members, the vice ... found in the payment to the union of a fee based upon the market value of the attorney's services also would exist in such payment under the present fund arrangement. By reducing the amount of its general funds the union is required to use to provide legal services, the payment to the fund of legal fees that exceed the union's expenses of providing the services would result in the union's indirectly utilizing legal fees for its ordinary expenses.
 Id. at 1580.
 
 
 [132]
 Devine v. NTEU, supra note 62, 805 F.2d at 386-389
 
 
 [133]
 FLRA Decision II, supra note 21, 32 F.L.R.A. (No. 3) at 29
 
 
 [134]
 Health Care Fin. Admin., supra note 61, 21 F.L.R.A. at 910
 
 
 [135]
 Id. at 915
 
 
 [136]
 Supra note 58
 
 
 [137]
 805 F.2d at 1409-1410. Curran was pending before the court on the cutoff date for the statutory transfer to the Federal Circuit of appellate jurisdiction over MSPB. A union represented a discharged employee in proceedings before MSPB and the Ninth Circuit which culminated in his reinstatement, and then sought attorneys' fees. Although the union had established a fund for legal services into which the fees would be paid, MSPB limited its fee award to the union's actual costs. This, the court held, for reasons later appearing herein, was erroneous
 
 
 [138]
 Id. at 1409 n. 2 (emphasis in original)
 
 
 [139]
 If any demonstration is needed, it may be made by a simple example. A union hires an attorney who engages in litigation on behalf of a disgruntled employee for a whole year, and the attorney wins. The union's fully-allocated cost of maintaining the attorney is $75,000, and $100,000 is allowed as a reasonable market-rate attorneys' fee and paid into the union's separate litigation fund. The monetary level of the fund increases by $25,000, and the union is relieved of a $100,000 addition it otherwise would have made to the fund. But, save only for the amount of the increase, exactly the same result would have followed an award of a cost-based fee of $75,000. The $100,000 benefit no more implicates ethics than the $75,000 does
 
 
 [140]
 Cornelius v. Nutt, supra note 86, 472 U.S. at 659, 105 S.Ct. at 2889, 86 L.Ed.2d at 525. See also 5 U.S.C. § 7701(g) (1988) (authorizing MSPB to "prescribe regulations to carry out the purpose of § 7701")
 
 
 [141]
 Curran v. Department of Treasury, supra note 58, 805 F.2d at 1410
 
 
 [142]
 Pennsylvania v. Delaware Valley Citizens' Council for Clean Air, 478 U.S. 546, 562, 106 S.Ct. 3088, 3096-3097, 92 L.Ed.2d 439, 454 (1986)
 
 
 [143]
 See cases cited supra note 117
 
 
 [144]
 Curran v. Department of Treasury, supra note 58, 805 F.2d at 1410. See also Save Our Cumberland Mountains, Inc. v. Hodel, 273 U.S.App.D.C. 78, 82-83, 857 F.2d 1516, 1520-1521 (1988) (en banc )
 
 
 [145]
 See Devine v. NTEU, supra note 62, 805 F.2d at 387; Goodrich v. Department of Navy, supra note 62, 733 F.2d at 1579
 
 
 [146]
 Supra note 57
 
 
 [147]
 See Wells v. Schweiker, supra note 60, 14 M.S.P.R. at 179-180; Devine v. NTEU, supra note 62, 805 F.2d at 387; Goodrich v. Department of Navy, supra note 62, 733 F.2d at 1579-1580
 
 
 [148]
 211 U.S.App.D.C. at 266, 656 F.2d at 855 (footnote omitted)
 
 
 [149]
 Supra note 56
 
 
 [150]
 223 U.S.App.D.C. at 327 n. 14, 691 F.2d at 516 n. 14
 
 
 [151]
 805 F.2d at 1408
 
 
 [152]
 Id. at 1409. The court added:
 We ... fail to see how such an indirect benefit encourages the unauthorized practice of law. Although the prospect of indirect benefits through successful litigation might encourage lay organizations to litigate more meritorious cases, they would still necessarily rely on attorneys to conduct the litigation. Moreover, an indirect benefit from an above-cost fee award would accrue to any contributor to a pro bono legal project receiving such an award. This would include contributors to the Legal Aid Society of New York, to which the Supreme Court approved an award of market rate fees in Blum....
 Id. at 1409-1410.
 
 
 [153]
 Id. at 1409
 
 
 [1]
 Even if there were a gap to fill, the FLRA's construction of §§ 5596 and 7701, see United States Dep't of Justice, 32 F.L.R.A. (No. 3) 20, 25-26 (1988), would be entitled to no deference from this Court. American Federation of Government Employees v. FLRA, 843 F.2d 550, 554 (D.C.Cir.1988) ("Because the [Back Pay] Act is not part of the FLRA's organic statute, the Authority's interpretation 'is entitled to respect before this court, but we are not bound by its construction of the statute even if reasonable.' " (quoting Professional Airways Systems Specialists v. FLRA, 809 F.2d 855, 857 n. 6 (D.C.Cir.1987))
 
 
 [2]
 Elsewhere this Court has been mindful of the fact that "[t]he Back Pay Act was intended to benefit wrongfully terminated employees, not their unions...." American Federation of Government Employees v. FLRA, 843 F.2d 550, 555 (D.C.Cir.1988)